Fox, Appellee, v. The Churngold Corp., Appellant.

(No. 8120—Decided June 11, 1956.)

*Messrs. Aug, Elder & Reilly,* for appellee.
*Messrs. Dinsmore, Shohl, Sawyer & Dinsmore* and *Mr. William A. Geoghegan,* for appellant.

Matthews, J.   The plaintiff, appellee herein, obtained a verdict for $3,500 and a judgment thereon as the result of a trial of issues raised by an amended petition and an answer thereto.   The defendant has appealed on questions of law from that judgment.

In his amended petition the plaintiff alleges that he was the owner of a certain Ford tractor, and that on February 1, 1954, he entered into a written lease, under the terms of which he was to furnish said tractor to haul the defendant's products on such schedules and to such places as defendant designated and to pay all the cost of operation of the tractor, in consideration of which the defendant agreed to pay plaintiff the sum of 13 cents for each mile traveled, for a period of one year, with the proviso that at the end of one year the lease would be automatically renewed for an additional year unless a five days' written notice of cancellation was given by either party to the other.

The plaintiff alleges also that he obligated himself to furnish a suitable driver, acceptable to the defendant, for the Ford tractor, and defendant obligated itself to pay the driver directly as a regular employee of the defendant. Plaintiff alleges also that it was orally agreed that he should be the driver and he was accepted by the defendant as such.

It is alleged also in the amended petition that defendant would pay plaintiff "14½ cents a mile on the lease and 6 cents as a driver."

It is alleged also that defendant orally agreed that it would "guarantee the plaintiff a minimum of 1,000 miles a week operation of his tractor under the lease and as driver."

Finally, it is alleged that plaintiff had fully performed all his obligations under the contract and was ready, willing, and able to continue to perform, but that defendant violated its obligation by notifying him on July 8, 1954, and thus before the expiration of one year, that it was cancelling said lease and would not continue to perform after July 14, 1954; that defendant did in fact refuse and failed to perform thereafter; and that plaintiff had been damaged in the sum of $5,772.50.

By answer, the defendant admits the plaintiff's ownership of the Ford tractor, and that, on February 1, 1954, it entered into a written lease thereof, whereby the plaintiff agreed to pay all the cost of operating the said tractor and that defendant agreed to pay 13 cents per mile for the use of the tractor and the sum of 7½ cents per mile for his services as its driver; and admits that it notified the plaintiff on July 8, 1954, of its intention to cancel said lease, and on July 14, 1954, did cancel said lease.

The defendant does not admit that the lease provided for a leasehold of one year, with an automatic renewal for an additional one year unless five days' written notice was given, quotes section 9, and alleges as a conclusion that the lease provided for an option to terminate the relation at any time upon five days' notice. The answer closes with a general denial of all allegations not specifically admitted.

At the trial, the plaintiff, without objection, introduced the written lease or agreement of February 1, 1954. This writing begins with the recital that the agreement or lease was between

"Carl Fox, of Guilford, Indiana, hereinafter called 'lessor,' and The Churngold Corporation having its principal office in Cincinnati, Hamilton County, Ohio, hereinafter called 'lessee,' Witnesseth that * * *." Then, after describing the Ford tractor, the writing proceeds as follows:

"The above described vehicle, is in good mechanical condition and is suitable for the transportation of margarine and other commodities.

"Whereas, lessor is desirous of leasing said vehicle, or vehicles; and

"Whereas, lessee is desirous of leasing the said vehicle, or vehicles, for the transportation of margarine and other commodities,

"Now therefore be it agreed as follows:

"1. In consideration of payment by lessee to lessor of the sum of 13 cents per mile operated or used, lessor hereby agrees to lease vehicle to lessee.

"2. Lessee will have complete domination and control over said vehicle or vehicles, during the full period of the lease and shall direct the operation of the vehicle, or vehicles, in all respects such as loading, unloading, reloading, departure, return time, route to use, etc.

"3. Lessor shall furnish all gasoline, oil, grease and other fuels and shall keep the vehicle, or vehicles, in good and serviceable condition.

"4. Lessee agrees to employ a suitable driver who shall be registered as a regular employee of lessee and shall receive his compensation directly from lessee who shall pay social security tax, workmen's compensation insurance and make deductions for income tax and all other requirements as required by any governmental body.

"5. Lessee further agrees to provide public liability and property damage insurance, which policy shall be made payable to the lessor and lessee, as their interest may appear.

"It is further understood and agreed that fire and theft insurance coverage shall be maintained by the lessor.

"6. Lessor shall pay for and provide license plates and, in the event the license tax falls due during the period of said lease, the lease shall automatically become null and void should

lessor fail to provide suitable license as required for the vehicle, or vehicles.

"7. It is further agreed by and between lessor and lessee that no name or marking shall be displayed upon the vehicle or vehicles, subject to this lease other than the name of the lessee should it so desire.

"8. It is further agreed by and between the parties hereto that the compensation for the use of vehicle, shall be paid by lessee to lessor weekly.

"9. It is further agreed that this agreement shall cancel all previous lease agreements between the parties and shall remain in effect for a period of one year from the date executed and from year to year thereafter, but may be cancelled on five (5) days' written notice from one party to the other."

A comparison of the terms of this lease, with the allegations of the amended petition, discloses at once that it fails to support the allegations of the amended petition in the following respects:

(1) There is no express provision for an unconditional lease for one year with an automatic renewal for another year, in the absence of five days' written notice of cancellation given by either party to the other.

(2) There is no provision giving the lessor the right to designate the driver of the tractor. That right is expressly granted to the lessee.

(3) There is no guarantee that the tractor would be operated 1,000 miles per week.

(4) There is no provision in support of the allegation that the plaintiff would be employed as a driver for 1,000 miles per week.

(5) There is no provision in the lease or allegation in the amended petition that plaintiff would be employed for one year.

Recognizing the variance between the allegations of the amended petition and the terms of the written agreement, the plaintiff's counsel proceeded to offer oral evidence to supplement the written agreement, and that immediately raised the question as to the competency of such testimony. The principal contention revolves around paragraph 9, relating to the duration of the lease. What is the meaning of the language? Is

its meaning clear? Or is its meaning uncertain or ambiguous? If uncertain or ambiguous, was oral evidence competent to prove that the parties had orally agreed during the negotiations that the duration should be for at least one year, without condition, and that the usage of the tractor by the defendant should be at least 1,000 miles per week?

Before attempting to answer these questions, let us consider the law applicable to the situation presented. First, let us explore the law relating to options to terminate leases and other contracts.

In 32 American Jurisprudence, 707, Section 830, it is said: "Leases may, and frequently do, contain provisions giving an election, option, right, or privilege to the parties or one of them to terminate the lease either at will or on the happening of some contingency * * *." See, also, 51 Corpus Juris Secundum, 656, Section 91. Of course, this is generally recognized, but doubt has been expressed as to whether this rule applies to a tenancy for successive periods, such as a tenancy from year to year, or, at least, the right to terminate has no application to the first of the successive terms. We think this doubt is removed by Section 20 of 1 Restatement of the Law of Property, where it is stated: "An estate from period to period is an estate which will continue for successive periods of a year, or successive periods of a fraction of a year, unless it is terminated." And the footnote, or "comment," thereto, reads:

"Defeasibility. An estate from period to period can be created subject to a special limitation (see, Section 23), a condition subsequent (see, Section 24), an executory limitation (see, Section 25) or a combination of these restrictions. * * *"

So we think it clear that the parties had the power, if they chose to exercise it, to create an estate from year to year and to make the entire tenancy subject to termination at the will of either or both parties. The question is, therefore, whether they chose to do so, and that question can only be answered by a consideration of the language used.

Paragraph 9, hereinbefore quoted, is the last provision contained in this contract. It necessarily refers to all the provisions that had gone before the statement that "this agreement" was to remain in effect continuously for a period of one

year and from year to year thereafter, unless terminated by five days' written notice. There was just one agreement creating a tenancy from year to year, and it was subject to be terminated by the happening of a condition subsequent, or in the language of the contract itself, "But may be cancelled on five (5) days' written notice from one party to the other."

In other words, it was an option which either could exercise, and, as will be pointed out later, future developments are easily imagined which would cause either or both to desire to exercise the option. In terms, the option was given to either party, and in its operation it was designed to protect each equally against the burden of a fixed term.

We are of the opinion that the provision is clear, definite, and unambiguous, and that the court erred in overruling the objection of the defendant to oral evidence that the provision for cancellation did not apply during the first year of the lease.

The court also admitted oral evidence that the defendant guaranteed that it would use the plaintiff's tractor for a minimum of 1,000 miles per week. It seems to us that in so doing the court erred. The parol evidence rule excludes all prior and contemporaneous negotiations that either contradict or add to the terms of a formal written contract, such as the one sued on, which the parties have by signing adopted as the exclusive memorial of their agreement. The rule is well stated in the second paragraph of the syllabus of *Charles A. Burton, Inc.,* v. *Durkee,* 158 Ohio St., 313, 109 N. E. (2d), 265, which we quote:

"Where parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, the parol evidence rule excludes from consideration evidence as to other oral promises resulting from such negotiations."

In this agreement, there was no hint of a guaranteed minimum. The provision is to pay 13 cents per mile traveled by the tractor.

We come now to the question of whether there is any evidence of an agreement on the part of the defendant to employ the plaintiff as a driver for a period of one year. Certainly, there is no provision in the written agreement to that effect. The only reference to a driver of the tractor is found in para-

graph 4, in which the defendant agreed to employ *a* suitable driver. It did not agree in the writing to employ the plaintiff. It was free to employ any suitable driver. As the employment of a driver was expressly excluded from the written contract, the parol evidence rule has no application and the plaintiff was free to prove any agreement on that subject by oral evidence. By such means, he did prove an agreement under which he acted as driver by and with the consent of the defendant, but there is no proof that the employment was for one year or for any other definite period. It was an employment from which either party could withdraw at will.

As we view the relation between these parties, created by this written agreement, there was nothing that was harsh or inequitable as to either. The escape clause was a normal, often employed provision by those contemplating a relation for a definite term but unwilling to commit themselves legally. There were reasons why these parties did not desire to so commit themselves. Should defendant not employ plaintiff as a driver, or should defendant make a limited use of the tractor, the plaintiff might very well become dissatisfied to the point where he would want to terminate the relation. On the other hand, the defendant might find that the arrangement was unsatisfactory for many reasons, either because it was too expensive, or because of changed business conditions other than the one that caused it to terminate the agreement. There is, at least, a suggestion that the defendant's future attitude, known to the plaintiff, was made uncertain by reason of the pendency of a possible change of corporate control.

Entertaining the view that the written agreement fixed the terms of the rental of the tractor, that oral evidence was incompetent to vary or add to it, and that there is no evidence of an employment of the plaintiff for a fixed term, we conclude that the court erred in overruling the defendant's motions for an instructed verdict and for judgment. For these reasons, the judgment is reversed and final judgment entered for defendant.

*Judgment reversed,*

Ross, P. J., and Hildebrant, J., concur.