Ray S. OLSEN, Plaintiff and Appellant,

v.

Robert J. AIRHEART and Beverly
I. Airheart, Defendants and
Appellees.

No. 18763.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1995.

Decided May 10, 1995.

Rehearing Denied June 19, 1995.

Verne Thorstenson, Thorstenson Law Office, Rapid City, for plaintiff and appellant.

Wayne F. Gilbert of Johnson Huffman, P.C. Rapid City, for defendants and appellees.

SABERS, Justice.

Olsen and Airheart entered into (1) a cow-calf agreement and (2) an oral farm ASCS partnership agreement. Airheart gave Olsen notice of termination after his marriage began to dissolve. Olsen sued and Airheart counterclaimed. The trial court assessed some damages on each party for breach of agreement. We reverse and remand to the trial court.

## FACTS

Ray Olsen (Olsen) and Robert and Beverly Airheart (Airheart) are farmers/ranchers in Meade County, South Dakota and did business together. They entered into two agreements in 1990.

### Cow-calf agreement.

A written cow-calf agreement provided Olsen 55 percent and Airheart 45 percent of the proceeds from the sale of cattle supplied by Olsen and cared for by Airheart. It stated:

> This agreement will run for three years or terminate *under mutual agreement* with six month notification by either party. (emphasis added).

Airheart unilaterally notified Olsen of his intent to terminate the agreement. However, Olsen claims he must mutually consent before the agreement may terminate.

Olsen brought suit for damages for breach of the cow-calf agreement. Olsen claims Airheart owes him:

1. $8,003.17 for calves sold in Airheart's name, without splitting the proceeds as required under the agreement.

2. $24,428 for wintering the cows from October 1992 to June 1993 and for one month pasture rent.

3. Cost of Labor for fencing or repair of fence, feeding for cows and bulls during winter of 1992–93.

4. Expenses for spring calving, including branding, dehorning, castrating and vaccinating, veterinary expenses and labor.

Olsen claims Airheart owes $34,527.17 for these expenses 1 through 4. Olsen claims in

the alternative that he lost the benefit of his bargain in the net sum of $50,000.[1]

Airheart claims he gave Olsen six months notice in March 1992, terminating the agreement because of his pending divorce. The trial court found that "the agreement of the parties specifically provided that [it] could terminate with six months notification by either par[ty.]" The trial court also found that Airheart provided the six month notification, as conceded by Olsen on cross examination, and that Airheart did not breach the agreement. The trial court denied Olsen's claims for breach of the cow-calf agreement.

### 1. Whether the cow-calf agreement required mutual agreement to terminate or only unilateral notification of termination?

In *Baker v. Wilburn,* 456 N.W.2d 304, 306 (S.D.1990), we stated:

> The effects and terms of a contract are questions of law to be resolved by the court. On appeal, this court can read a contract itself without a presumption in favor of the trial court's determination. The court is to enforce and give effect to the unambiguous language and terms of the contract. Whether the language of a contract is ambiguous is a question of law for the court. A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct.

*Id.* (citations omitted).

■ In reviewing the terms of this contract, it clearly requires that termination shall be "under mutual agreement." Olsen claims he never consented to the termination. The trial court held that the six months' notice was sufficient and did not uphold the "under mutual agreement" requirement. Here, there is no "genuine uncertainty." *Baker,* 456 N.W.2d at 306. Therefore, the trial court erred as a matter of law by ignoring the "mutual agreement" requirement. *Id.* We reverse and remand to the trial court to consider whether the agreement was mutually terminated and whether any damages resulted.

### Oral farm agreement.

The parties also entered into an oral farm partnership in 1990 which was to run for two years. It appears it is customary in the industry to have such contracts by oral agreement. Each party contributed their respective land to the Agricultural Stabilization and Conservation Service (ASCS) program to increase their acreage base and maximize their benefits. This program was a price support program for wheat farmers. Each party had certain prescribed duties under the agreement. Olsen was to receive 60 percent and Airheart 40 percent of the ASCS payments and any profits from the sale of the grain.[2]

After one year under the agreement, Olsen sold 2,400 acres which were part of the oral agreement. Airheart claims Olsen breached the agreement because of the premature withdrawal of these acres. There was testimony, over objection, that the acres would

---

1. Olsen's other claims need not be addressed at this time in view of our holding in this section that the case must be remanded.

2. Olsen claims damages for breach of this oral agreement:

   1. He claims $30,000 in proceeds in the sale of oats and wheat. The trial court found Airheart owed $23,368.01 with 12 percent interest from February 1989.
   2. Olsen claims compensation for labor totalling $1,200 and other expenses totalling $74. The trial court found that these claims were included in partnership contributions and denied recovery.
   3. Olsen claims he "loaned" Airheart $15,000.00 at 12 percent interest so Airheart could retain a grain truck for his custom harvesting operation. As collateral, Olsen retained 10 Red Angus female cattle. The trial court found that the loan was secured by the cattle and that Airheart still owes Olsen $8,600.00.
   4. Olsen claims Airheart stored some equipment in his storage shed during the winters of 1990–1991 and 1991–1992 at $1 per day per item for a total of $660.00. The trial court found that the equipment was used as part of the partnership agreement through Olsen's "voluntary permission."
   5. Olsen demanded payment for some equipment and lumber. The trial court found that this was covered under the partnership agreement and denied recovery.

   The trial court's findings are affirmed on these five claims.

have yielded 38 bushels per acre. Airheart's damages were calculated by multiplying the number of bushels per acre, 30, times $3.10 price per bushel, times 2,400 acres, times Airheart's 40 percent interest, equalling $105,280.00.

Olsen objected to this damage assessment because the "claim of 2,400 acres of wheat base acres removed is without support in the evidence, is a claim for net profit from unfurnished seed, fuel not provided and work never performed."

## 2. Whether the trial court properly calculated the damages for breach of the farming agreement?

"[T]he amount of damages to be awarded is a factual issue to be determined by the trier of fact[.]" *Sander v. The Geib, Elston, Frost Professional Assoc.*, 506 N.W.2d 107, 119 (S.D.1993) (citation omitted). When reviewing questions of fact on appeal, this Court defers to the fact finder and will not overturn its decision unless clearly erroneous. *Permann v. Dept. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 115 (S.D. 1987).

The trial court's assessment of damages was as follows:

30 bushels per acre times $3.10 per bushel = $93.00

2400 acres times $93.00 per acre = $223,200.00 total

$223,200.00 times Airheart's 40 percent interest = $89,280.00;

$89,280.00 plus 40 percent of the $40,000 ASCS payment = total lost profits of $105,280.00.

 The trial court found the average yield per acre would be 30 bushels, although testimony indicated that the land yielded 38 bushels per acre the previous year. The trial court did not state whether lowering the number of bushels was to offset the price of fuel, labor and seed, which Airheart was required to provide under the agreement. Olsen objected as indicated above. Therefore, this amount represents gross profit, not net profit. The trial court should have subtracted Airheart's expenses for labor and materials under the agreement. *See Winter-*

*ton v. Elverson*, 389 N.W.2d 633, 637 (S.D. 1986) (loss of crop damages assessment must subtract necessary expenses). A damages computation error may be corrected on appeal. *Id.* It was error to assess damages without considering that Airheart would be required to provide labor and other materials if the acres had been farmed. *See Id.* We reverse and remand to the trial court to reduce the damages by considering Airheart's expenses under the agreement.

MILLER, C.J. and AMUNDSON and KONENKAMP, JJ., concur.

GILBERTSON, J., not having been a member of the court at the time this case was submitted, did not participate.