**AHLERS BUILDING SUPPLY, INC., a Corporation, Plaintiff and Appellee,**

v.

**Peter A. LARSEN and Vickie A. Larsen, Defendants and Appellants.**

No. 18686.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1995.

Aug. 2, 1995.

Phillip O. Peterson, Thomas J. Penisten, of Frieberg, Rudolph and Peterson, Beresford, for plaintiff and appellee.

Wayne D. Groe, Stickney and Groe, Elk Point, for defendants and appellants.

KONENKAMP, Justice.

Homeowners appeal damages awarded to a contractor on a home remodeling project. We affirm in part and reverse in part.

### FACTS

Vickie and Peter Larsen (Larsens) solicited bids for remodeling their home. After presenting preliminary architectural plans to Ahlers Building Supply (Ahlers), its agent, Todd Lindgren, developed a blueprint and offered a base contract bid of $45,500. Any additional changes the Larsens might later request beyond the original plans would cost more. The Larsens accepted. Construction

was scheduled to begin the week of April 22, 1991 and end the week of June 15, 1991.

Assured construction would be completed within sixty days, the Larsens arranged for project financing. At the half-way point, they paid Ahlers half the base contract price ($22,750). The Larsens requested a number of changes and additions during the course of construction. Ahlers kept separate records on the labor and materials needed for these changes. From time to time the Larsens were dissatisfied with Ahlers' workmanship, so many corrections were made. After months of delay the Larsens paid additional fees to extend the bank's loan commitment, but they eventually lost their financing anyway. Communications between the parties broke down and the Larsens made no further payments to Ahlers. In January 1992, with the project almost complete and building defects yet uncorrected, Ahlers sent a letter to the Larsens ending their business relationship.

The floor of the new addition was several inches lower than the rest of the house, despite the fact the plans provided otherwise. Ahlers thought the level should be lower to prevent damage to the rest of the house should the hot tub in the addition leak. The Larsens wanted it level with the rest of the home in the event handicap accessibility was ever needed. Wood siding was installed without alternating the joints, thereby creating visible seams, which the contract was silent about, but was nonetheless aesthetically unpleasant to the Larsens. Stain Ahlers' painting contractor used on the siding was applied inconsistent with manufacturer instructions, was the wrong shade of color, and portions of the siding were left unstained.

The cement contractor warned Lindgren and Peter Larsen the garage drainage pipe was not far enough below the garage floor and would cause the concrete to crack. Larsen and Lindgren had the contractor pour the concrete anyway. Shortly afterwards, because the drain was at the high point of the floor, water would not drain. Two to three weeks later, the floor cracked. The cement contractor agreed to correct the problem if the Larsens would provide the materials needed, but the Larsens rejected the offer. Ahlers later sent the Larsens a letter stating the cement contractor would "take care of the garage floor." Nothing came of it.

Metal beading strips were merely pressed, rather than nailed, to the edges of sheetrock eventually causing cracks in the interior walls when the strips loosened. Nails used to hang sheetrock popped loose. Shake shingles were installed at a seven inch exposure rather than ten inches—meaning more had to be used thereby increasing costs. A skylight window was installed in the shake roof although installation instructions warned against doing so. Other windows were ill-fitted into rough openings preventing them from opening and closing properly. Although the plans called for a two foot by four foot fireplace, its dimensions were two by two. The chimney was also improperly installed.

The Larsens hired a new contractor in July 1992 who corrected the defects with the garage floor, fireplace and chimney, walls, and windows. New wood siding was installed and stained. The Larsens saved the improperly stained pieces for Ahlers, but Ahlers never retrieved them. Ahlers corrected many other defects, which are not at issue here.

The following August, Ahlers sued to recover on the remainder of the contract price, plus the agreed upon change order amounts. The Larsens counterclaimed alleging Ahlers' failure to finish the contract and seeking expenses for hiring someone else to complete it. At trial, both parties produced different written versions of their agreement. Both copies contained sixteen identical provisions, several change orders and an addendum. The Larsens' copy, however, bore the signatures of Peter Larsen and Ahlers' agent and contained fourteen pages not found in Ahlers' version. Ahlers' version contained no signatures and included one page not a part of the Larsens' copy. Both sides agree their documents were prepared by Ahlers' agent, who did not testify. Although the trial court never revealed which version it determined was the true contract, the findings of fact imply it accepted Ahlers' version.

The trial court found the parties agreed to allowances for plumbing and painting whereby expenses exceeding the estimated contract amounts for the respective tasks would be added to the final price as specifically outlined in Ahlers' version. According to the trial court's findings, the $1,450 plumbing allowance was exceeded by $3,061 and the $800 painting allowance was exceeded by $1,155. Overall, the trial court concluded Ahlers expended $17,138.10 above the base contract price for change orders, additions, and allowance excess and Larsens spent $10,637 correcting Ahlers' mistakes. Ahlers was awarded $29,251: the difference between Ahlers' and Larsens' expenditures plus the remaining half of the base contract price. The court disallowed prejudgment interest. On appeal, the Larsens raise four issues; we examine the following two issues:

I.   Did the trial court err in not specifying which contract applied?

II.  Did Ahlers substantially comply with the written contract?

We conclude the trial court erred in awarding Ahlers for alleged painting allowance overages, thus we reverse that award only and otherwise affirm.

## DECISION

### I. Different Versions of Contract

The parties presented dissimilar copies of the remodeling agreement to the trial court thereby leaving it to determine which one was the valid express contract. *Werner v. Norwest Bank*, 499 N.W.2d 138, 141 (S.D. 1993); *Mid–America Marketing. Corp. v. Dakota Industries*, 289 N.W.2d 797, 799 (S.D.1980). The trial court never specifically decided which contract version prevailed. Yet we can answer the question as a matter of law. *North River Ins. Co. v. Golden Rule Const.*, 296 N.W.2d 910, 912–13 (S.D.1980); *Teigen Const. v. Pavement Specialists, Inc.*, 267 N.W.2d 574 (S.D.1978).

The first fourteen pages of the Larsens' version contain twelve "divisions" detailing specifics of the construction project. Although these divisions are absent from Ahlers' copy, Ahlers neither contests them nor are they part of the dispute. Ahlers' version, a copy of which was attached to its complaint, contains a page labeled "BID SHEET (Cont.)" which sets plumbing and painting allowances. This bid sheet is absent from the Larsens' copy; thus the allowances are in dispute.

▮ Division 11 of Larsens' version states, "PLUMBING = An allowance of $1,450 shall be included in the contract." This clause further describes the plumbing work to be performed. Section 5 of "ADDENDUM # 1" of Larsens' version explains that the contractor will install the fireplace under the plumbing allowance. A change order attached to Larsens' version dated May 1, 1991 noted that labor for the heating system would be included in the plumbing allowance. The extra bid sheet merely reemphasizes it. At trial, Peter Larsen acknowledged its existence, hence we uphold the court's ruling on this allowance.

Considering the parties' remaining arguments, the painting allowance is the only material distinction between the two contracts. Division 9, section G of the Larsens' contract contains the only reference to painting:

All exterior siding and millwork shall be stained in accordance to manufacturer's recommendations. (Color to selected [sic] by owner.)

Interior walls and ceilings: All walls and ceilings shall have one coat of primer with two coats of semi gloss paint.

No mention of a painting allowance ever appears in Larsens' copy—the only version containing the parties' signatures. (In contrast with the detailed plumbing allowance.) The extra bid sheet in Ahlers' version contains the only reference to a painting allowance in either contract.

▮ If the cost of painting was unknown and required merely an estimate as Ahlers now proclaims, Ahlers failed to adequately inform its customer of this belief. As drafter of the contract, Ahlers bore the responsibility of preventing ambiguity. *Production Credit Ass'n v. Wynne*, 474 N.W.2d 735, 740 (S.D. 1991). No one asserts there was an oral agreement for a painting allowance nor is there evidence extra painting expenses re-

sulted from change orders and additions. "Ambiguities arising in a contract should be interpreted and construed against the scrivener." *Id.; Forester v. Weber,* 298 N.W.2d 96, 97 (S.D.1980). Plainly, there is no proof such an agreement existed with the Larsens, who had every right to believe the painting specified in their signed contract would be included in the contract price. Furthermore, substitution or modification of a contract cannot be effected by the sole action of one of the parties to it. The consent of both is required to alter or supplant a contract fairly made. *Sturm v. Boker,* 150 U.S. 312, 14 S.Ct. 99, 37 L.Ed. 1093 (1893); 17A Am. Jur.2d Contracts § 513 (1991). No evidence of mutual assent to this extra bid sheet exists. SDCL 53–1–2. As the Larsens' copy is binding, the trial court erred in ruling the painting allowance was exceeded by $1,155 and should be charged to Larsens. *Wolff v. Royal Ins. Co. of America,* 472 N.W.2d 233 (S.D.1991).

## II. Substantial Performance

▮ To recover its contract price, Ahlers had the burden of proving substantial performance of its contract. *Barton Masonry, Inc. v. Varilek,* 375 N.W.2d 200 (S.D. 1985). The question of substantial performance is a question of fact and findings on this matter will not be reversed absent clear error. *Northern Farm Supply, Inc. v. Sprecher,* 307 N.W.2d 870, 872 (S.D.1981). "It must be remembered that substantial performance is not full performance and that the party who relies on the doctrine has breached his contract." John D. Calamari and Joseph M. Perillo, The Law of Contracts § 11–18 (3rd ed. 1987).

> If performance was substantial, the contractor is entitled to recover the contract price less deductions for defects in performance. (Citation omitted.) If performance was not substantial, the contractor is entitled, at most, to the value of the benefit that he conferred upon the owner under a theory of quantum meruit or unjust enrichment, and not the contract price minus defects. See *Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496 (1963); *Woodford v. Kelley,* 18 S.D. 615, 101 N.W. 1069 (1904).

*Van Den Hoek v. Bradwisch,* 273 N.W.2d 152, 154 (S.D.1978). The trial court never specified whether it used the "substantial performance" test or some other precept to assess Ahlers' breach. Nevertheless, by the nature of the damages it awarded, the court obviously found Ahlers substantially performed its contract.

▮ The Larsens supplied the shake shingles for their roof and were dissatisfied with overlapping shingles leaving seven inches exposed. A seven inch exposure meant more shingles and increased expense. The trial court accepted the explanation that seven inches was an appropriate exposure. We see no reason to disturb this resolution. *Century 21 v. Hoffman,* 503 N.W.2d 861, 864 (S.D.1993). The trial court found Ahlers' work on the garage floor, fireplace, siding, and windows was "improper." The rule of "substantial performance" provides that where a contract is made for an agreed exchange of two performances, one which is to be rendered first, substantial performance rather than a contractor's exact or strict performance of the terms of the contract is adequate to entitle a contractor to recover on it. *Brown–Marx Associates, Ltd. v. Emigrant Sav. Bank,* 703 F.2d 1361 (11th Cir. 1983). A contractor who has rendered substantial performance on a contract is entitled to judgment for the contract price, less the cost of minor defects and nonperformance brought about unintentionally or caused inadvertently. *Dixon v. Nelson,* 79 S.D. 44, 107 N.W.2d 505, 507 (S.D.1961); 3A A. Corbin, Corbin on Contracts § 701, at 314–15 (1951). To determine if a building contractor is entitled to the contract price, we consider whether the contractor built the project as promised. *Id.* at 311–312. Defects not easily remedied are sufficient to deny a contractor relief. *Van Den Hoek,* 273 N.W.2d at 154. "An important factor in this determination is whether the deviation from the contract defeats the purpose of the contract in any substantial manner." *Id.*

The Larsens argue the remodeling project had so many defects, some of which could hardly be classified as inadvertent, Ahlers did not substantially perform. The trial

court heard the evidence in this fact intensive dispute, weighed both parties' circumstances, and had a full opportunity to assess the defects in light of the entire project. In Justice Cardozo's words "Where the line is to be drawn between the important and the trivial cannot be settled by a formula.... The question is one of degree, to be answered, if there is doubt, by the triers of the facts...." *Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889, 891 (1921).

■ Larsens corrected the defects by hiring others to repair Ahlers' mistakes and finish the job. For this the trial court deducted an offset of $10,637 from the contract price. *Van Den Hoek,* 273 N.W.2d at 154; *Aldrich v. Wilmarth,* 54 N.W. 811 (S.D.1893). With the exception of the difference in room levels, every other defect could be recompensed with money. The trial court properly compensated Ahlers for the work performed less the amount required to remedy Ahlers' defective or uncompleted work.

Other than the erroneous charge against the Larsens for $1,155 excess painting expenses, we affirm the trial court's computation of damages. While the trial court's calculations for offsetting damages may not have been itemized, Larsens have failed to show how the decision was clearly erroneous. *Selle v. Pierce,* 494 N.W.2d 634, 636 (S.D. 1993).

Affirmed in part, reversed in part.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.