1998 SD 86

**Kenneth SINGPIEL, Plaintiff and Appellee,**

v.

**Mitchel E. MORRIS, Defendant,**

and

**Morris Construction Company, Inc., d/b/a Morris Construction Company, Defendant and Appellant.**

No. 20056.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1998.

Decided Aug. 5, 1998.

Rehearing Denied Sept. 9, 1998.

**716**

George Beal of Beal Law Offices, Rapid City, for plaintiff and appellee.

Barton R. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, for defendant and appellant.

---

* Although it was Singpiel's understanding that the lease would run for a five year term and the lease references itself as a "(5) year agreement," the

AMUNDSON, Justice.

[¶ 1.] Kenneth Singpiel brought this action against Morris Construction Company, Inc. (Morris) to terminate a lease. Singpiel was granted summary judgment. Morris appeals. We affirm.

## FACTS

[¶ 2.] Singpiel agreed to lease Morris a gravel pit that would be used as part of Morris' construction business. Additionally, Mitchell E. Morris, the CEO of Morris Construction Company, leased pasture to Singpiel. Although Singpiel has brought actions to terminate both leases, only the gravel pit lease is at issue in this appeal.

[¶ 3.] The gravel pit lease was executed between Singpiel and Morris on November 22, 1995, after having been typed up by Mitchell Morris' wife. The 1995 lease was based, in part, on a previous lease which began in 1985 and was no longer in effect. The 1995 agreement was made, as recited in paragraph II of the lease, "for the purpose of mining gravel, produce materials, blend and mix with other materials, haul materials, service equipment, and final reclamation of the property." The term of the lease was set out as follows in paragraph IV:

The terms of this agreement shall be from March 1, 1995 to and including February 28, 2001, and grants the option to renew this agreement for an additional five (5) years upon exercising said renewal option at least thirty (30) days prior to the expiration of the original then (5) year agreement by giving notice of intent to exercise said option in writing.*

The termination provisions of the agreement consisted of the following from paragraph X of the lease:

TERMINATION

Lessee agrees that prior to the termination of this agreement that all fixtures and personal property which it has erected or placed thereon shall be removed at Lessee expense. If improvements are not removed by such date they shall become the

lease term from March 1, 1995, to February 28, 2001, is actually six years.

property of the owner of said real property.

This lease may be terminated at anytime by written notice of at least Thirty (30) days as agreed upon by both parties.

[¶ 4.] On August 28, 1996, Singpiel sent a notice via certified mail claiming violations of the 1995 pit lease and purporting to terminate the lease, effective October 1, 1996. Singpiel claimed the right to terminate the lease after thirty days' notice under the provisions of paragraph X quoted above. Morris refused to accept this, so Singpiel brought suit to terminate the lease.

[¶ 5.] After some written discovery requests had been served, Singpiel moved for summary judgment, contending that the 1995 gravel pit lease was terminable at will upon thirty days' notice under paragraph X of the agreement and that the lease was, in fact, terminated by the written notice admittedly received by Morris. Morris responded by contending that the lease was for a term of years and could not be unilaterally terminated at will and without cause.

[¶ 6.] After considering the arguments of the parties, the trial court found that the termination provision upon thirty days' prior notice was sufficiently clear and granted the summary judgment motion. The court ruled at the summary judgment hearing as follows:

All right, I am going to grant your motion for summary judgment. I am going to find that the contract is clear as regards to terms and conditions as set forth in paragraph ten. That the language, ["]as agreed upon by both parties["], refers to the period of time in which notice must be given for termination of the lease.

The order granting partial summary judgment was entered on March 11, 1997. Morris appeals, raising the following issue:

Whether a material issue of fact as to the intention of the parties to a lease agreement was presented on Singpiel's motion for summary judgment.

### STANDARD OF REVIEW

[¶ 7.] "Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991). (quoting *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 223 (S.D.1988)) (other citations omitted). "The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party." *Groseth Int'l., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 164 (S.D.1987) (citation omitted).

Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 837 (S.D.1990) (citation omitted).

[¶ 8.] "Interpretation of contractual provisions is a question of law. Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination." *Commercial Trust & Sav. Bank v. Christensen*, 535 N.W.2d 853, 856 (S.D.1995) (citations omitted).

### DECISION

**Did the trial court err in ruling as a matter of law that the 1995 gravel pit lease provides the option to terminate the agreement at the will of either party on thirty days' notice?**

[¶ 9.] The key provision in the lease, which is at issue in this appeal, is the following provision from paragraph X: "This lease may be terminated at any time by written notice of at least Thirty (30) days as agreed upon by both parties." Singpiel contended, and the trial court agreed, that this provision allowed for either party to terminate the lease upon thirty days' notice. The trial court held that the language "as agreed upon by both parties" refers to the period of time in which notice must be given for termination of the lease. Morris contests this view, claiming that this language requires that both parties to the lease agree to the termination.

[¶ 10.] "[I]n determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties." *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985) (citing *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D.1982); *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980); *Huffman v. Shevlin*, 76 S.D. 84, 72 N.W.2d 852 (1955)). "In determining the intention of the parties, a court must look to the language that the parties used." *Malcolm*, 365 N.W.2d at 865 (citations omitted). The lease uses language to the effect that it can be "terminated at any time by written notice of at least thirty (30) days *as agreed upon by both parties.*" (Emphasis added.) If the last clause of the sentence had stated "*if* agreed upon by both parties," Morris' contention that there must be mutual agreement before the lease is terminated would be persuasive. As it stands, the clause "as agreed upon by both parties" simply recites the parties' agreement as to the minimum notice period before termination. Thus, this last clause does not purport to make the agreement of both parties a condition precedent to termination of the lease.

[¶ 11.] Furthermore, if termination required the mutual consent of both parties, it is difficult to understand why the notice provision "of at least thirty days" was inserted in the termination clause in paragraph X. If the parties had to mutually agree to the termination why would they not also agree on a mutually convenient period before termination would become effective? Morris contends in its brief that "[w]ithout the provisions of Paragraph X, a mutual termination of the lease could effect a forfeiture if Morris had not yet removed its equipment and reclaimed the pit. Thus, Paragraph X would operate to afford thirty days during which Morris could complete the removal of its equipment, etc." This scenario seems to rest on the absurd assumption that Morris would agree to a termination of the lease at a time when it was not prepared to vacate the premises. Essentially, Morris would have us believe that it needed Paragraph X as a safeguard to protect itself from the possibility that it would foolishly agree to terminate the agreement without allowing itself enough time to remove its equipment.

[¶ 12.] Also, Morris' statement that "[p]aragraph X would operate to afford thirty days during which Morris could complete the removal of its equipment" impliedly admits that Morris could make any necessary reclamation and remove its equipment within thirty days. Thus, it undercuts any argument by Morris that if paragraph X was interpreted to allow for unilateral termination, the thirty-day provision would be insufficient to wrap up its operations and remove its equipment.

[¶ 13.] Morris contends that the six-year term and the option to renew transform the lease, when construed as a whole, into one for a term of years which cannot be terminated without cause. Morris argues that the trial court's construction of paragraph X nullifies the provisions of the six-year term of the lease and the option to renew.

[¶ 14.] It is true that "[w]e consider contracts as a whole and all of the provisions, including those granting an option, are examined to determine the meaning of any part." *Cowan v. Mervin Mewes, Inc.*, 1996 SD 40, ¶ 6, 546 N.W.2d 104, 107 (citations omitted). However, there is no inherent conflict between the trial court's construction of paragraph X and the rest of the lease. "Leases may, and frequently do, contain provisions giving an election, option, right, or privilege to the parties or one of them to terminate the lease either at will or on the happening of some contingency...." 49 Am.Jur.2d *Landlord and Tenant* § 220 (1995). In *Fox v. Churngold Corp.*, 101 Ohio App. 368, 136 N.E.2d 754 (1956), after citing the above quote, the court stated:

So we think it clear that the parties had the power, if they chose to exercise it, to create an estate from year to year and to make the entire tenancy subject to termination at the will of either or both parties.

\*   \*   \*   \*   \*   \*

In other words, it was an option, which either could exercise, and ... future developments are easily imagined which would cause either or both to desire to exercise the option. In terms, the option is given to either party and in its operation it was

designed to protect each equally against the burden of a fixed term.

*Id.,* 136 N.E.2d at 757; *see also Vinyard v. Republic Iron & Steel Co.,* 205 Ala. 269, 87 So. 552, 556 (1921) (holding "[p]arties may make [leases allowing for early termination] if they choose, and the right of the lessee to occupy and enjoy the premises, though subject to such an interruption, is a consideration of value and will support the agreement.") (citations omitted). Interpreting the contract as a whole, we find no reason that paragraph X cannot operate to give either party a unilateral right of termination without obviating the rest of the lease term provisions.

[¶ 15.] *Olsen v. Airheart,* 531 N.W.2d 571 (S.D.1995), also involved an agreement which contained a termination provision that was at the heart of a dispute between the parties. The dispute centered on whether the termination provision in their contract required mutual agreement or whether only unilateral notification of termination was required. The termination provision at issue in *Olsen* provided as follows: "This agreement will run for three years or terminate *under mutual agreement* with six month notification by either party." *Id.* at 571 (emphasis in original). The trial court held that this provision allowed termination by either party. This Court reversed, finding that the agreement clearly required that termination be "under mutual agreement." *Id.* at 572. However similar *Olsen* may appear to be to the case at hand, it is clearly distinguishable because the phrase "under mutual agreement" clearly deals with the termination of the contract. In the present case, there is no phrase that explicitly requires mutual agreement in order to terminate the contract.

■ [¶ 16.] In the alternative, Morris has argued that the agreement is ambiguous and requires evidence of intent prior to its interpretation and enforcement. "Whether contract language is ambiguous is ordinarily a question of law." *Roth v. Roth,* 1997 SD 75, ¶ 16, 565 N.W.2d 782, 786 (citation omitted). We have set out the standard to determine if ambiguity is present in a contract as follows:

"A contract is not rendered ambiguous simply because the parties do not agree on

its proper construction or their intent upon executing the contract." 17A Am.Jur.2d *Contracts* § 338 (1991). *Accord Johnson v. Johnson,* 291 N.W.2d 776, 778–79 (S.D. 1980). Rather, a contract is ambiguous only when "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement...." 17A Am.Jur.2d [*Contracts* ] § 338. *See also City of Sioux Falls v. Henry Carlson Co., Inc.,* 258 N.W.2d 676, 679 (S.D.1977).

*Ducheneaux v. Miller,* 488 N.W.2d 902, 909 (S.D.1992).

[¶ 17.] After reviewing the four corners of the lease, we find no plain ambiguity in the agreement. Paragraph X clearly sets out a right of termination tempered by the requirement of at least thirty days' notice. Morris struggles to find ambiguity by claiming that the trial court's interpretation will place Morris completely "at the mercy of Singpiel in this contract." However, it is not as if Morris was at the mercy of Singpiel to "take the contract or leave it." Morris was sophisticated enough to take the provisions of the previous lease agreement executed in 1985 and make changes beneficial to the company. Changes included reducing the tonnage payment in the 1995 lease to thirty cents per ton from thirty-five cents per ton in the 1985 lease. Also, under the prior 1985 lease, Morris was required to pay $4,000 on each anniversary date of the lease, which would then be offset against tonnage payments up to that amount due for that year. The 1995 lease was adjusted so that no upfront lease payment was required and Morris also received a $4,000 credit as against tonnage payments for that year. This latter change was made because Singpiel began leasing pasture from Morris, so part of the payments due under the pasture lease were offset against payments due under the gravel pit lease.

■ [¶ 18.] Furthermore, Mitchell Morris' wife typed up this agreement, so it should have been no surprise to Morris when those terms were enforced. There is a presumption that a written agreement proclaims

the ultimate intention of the parties. *Carr v. Benike, Inc.*, 365 N.W.2d 4, 6 (S.D.1985) (citation omitted). Moreover, Morris has not refuted the evidence that it was the drafter of the lease and thus should bear the burden of any ambiguity it contains. "[O]ne who speaks or writes a contract can by exactness of expression more easily prevent mistakes in meaning than one whom with he is dealing[;] therefore[,] any doubts arising from ambiguity of language are resolved in favor of the latter." *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 152 (S.D.1986) (citing Williston on Contracts 621 (1961)).

[¶ 19.] As to Morris' complaints about the harshness of the agreement, we have said before that "we will not put trial courts in the position of relieving parties of an initial bad bargain[.]" *Moller v. Moller*, 356 N.W.2d 909, 911–12 (S.D.1984). We hold the lease is not "capable of more than one meaning[.]" *Ducheneaux*, 488 N.W.2d at 909. Thus, the lease is unambiguous.

[¶ 20.] Affirmed.

[¶ 21.] MILLER, C.J., KONENKAMP and GILBERTSON, JJ., concur.

[¶ 22.] SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

[¶ 23.] I concur in result only. If the trial court were correct in concluding that the termination clause was unambiguous, then this case would be controlled by *Olsen v. Airheart*, 531 N.W.2d 571 (S.D.1995), and the opposite result would be required.

[¶ 24.] However, the phrase, "as agreed upon by both parties," *is* ambiguous, as it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement[.]" *Ducheneaux v. Miller*, 488 N.W.2d 902, 909 (S.D. 1992) (citations omitted). This phrase must mean something—there is no reason to include it in a contract which obviously contains *only* terms "agreed upon by both parties."

[¶ 25.] Its meaning is not clear and, unfortunately for Morris, ambiguities arising in a contract are "interpreted and construed against the scrivener." *Ahlers Bldg. Supply, Inc. v. Larsen*, 535 N.W.2d 431, 435 (S.D. 1995). Here, Morris had his wife retype and prepare the lease based on the prior version; he is therefore bound by it as "any doubts arising from ambiguity of language are resolved in favor of [Singpiel]." *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 152 (S.D.1986).

[¶ 26.] We should affirm the trial court for reaching the right result even though its conclusion that the phrase was unambiguous was erroneous. *See Sommervold v. Grevlos*, 518 N.W.2d 733, 740 (S.D.1994) ("[A] trial court may still be upheld if it reached the right result for the wrong reason.") (citation omitted).