#24864-a-JKM

**2008 SD 122**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MYRIL ARCH,                                    Plaintiff and Appellant,

   v.

MID-DAKOTA RURAL WATER
SYSTEM,                                        Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

AL ARENDT                                      Attorney for plaintiff
Pierre, South Dakota                           and appellant.

PATRICK M. GRODE of
May, Adam, Gerdes & Thompson, LLP              Attorneys for defendant
Pierre, South Dakota                           and appellee.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 3, 2008

OPINION FILED **12/17/08**

MEIERHENRY, Justice

[¶1.] The issue before the Court is whether Mid-Dakota Rural Water System (Mid-Dakota) is obligated to provide water to all 12 lots in a housing development owned by Myril J. Arch (Arch). The circuit court granted summary judgment in favor of Mid-Dakota, determining that Mid-Dakota was not obligated to provide water service. Arch appeals. We affirm.

[¶2.] Arch owns rural property in Hughes County, South Dakota. He has a restaurant, "Cattleman's Club," on part of the property; however, most of the property is agricultural land. Mid-Dakota, a non-profit corporation incorporated in 1987, provides potable water to rural areas in 13 counties in central South Dakota.

[¶3.] Around 2002, Arch learned that Mid-Dakota planned to make water available to rural customers near Arch's property. Mid-Dakota had approached Arch about obtaining an easement to run its waterline across Arch's land. When Arch learned about Mid-Dakota's plans to make rural water available to the area, he decided to develop part of his land into rural home sites. Arch eventually agreed to the easement if Mid-Dakota would extend the waterline to his planned home sites. Mid-Dakota agreed. The agreement consisted of a one-sentence agreement, hand written on a notepad by an employee of Mid-Dakota. The agreement, signed and dated by the employee, provided: "Mid-Dakota will do a Mainline Extension to 'Arch's Acres' (4" Line) to serve the proposed Development, provided there are at least 3 hook-up[s] when we get things platted and underway."

[¶4.] Because Mid-Dakota's water treatment plant and distribution system had limited capacity, Mid-Dakota required potential customers to sign a Water User

Agreement and pay a hook-up fee in order to reserve water. The individual hook-ups and water service agreements were governed by separate Water User Agreements provided by Mid-Dakota to potential customers.

[¶5.]        Once Arch agreed to grant Mid-Dakota the easement, Mid-Dakota installed a four-inch waterline to Arch's development. Arch signed two Water User Agreements and purchased two hook-ups. About two years later in 2004, Arch requested a third hook-up but was told by a Mid-Dakota employee without explanation that "they couldn't do it." Arch did not inquire further nor did he complete a Water User Agreement or pay a fee for the third hook-up. Thereafter, Arch made no other requests for hook-ups in the development.

[¶6.]        In July of 2006, Mid-Dakota's treatment plant reached capacity prompting Mid-Dakota's board of directors to place a moratorium on new waterline hook-ups. When Arch learned that the moratorium applied to new hook-ups in his development, he initiated this lawsuit for breach of contract. Mid-Dakota filed a motion for summary judgment in response to Arch's lawsuit. The circuit court granted the motion, dismissed the case, and entered judgment in favor of Mid-Dakota based on the court's determination that the July 14, 2003, agreement did not obligate Mid-Dakota to provide water service to the lots in Arch's development.

[¶7.]        The only issue on appeal is whether the circuit court erred in granting Mid-Dakota's summary judgment motion. "We will affirm the trial court's grant or denial of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided." A-G-E Corp. v. State, 2006 SD 66, ¶13, 719 NW2d 780, 785 (citations omitted). "[T]he interpretation of a

contract is a question of law, which is reviewed de novo." *Id*. ¶15, 719 NW2d at 786 (citation omitted).

[¶8.]     The only terms of the contract are as follows: "Mid-Dakota will do a Mainline Extension to 'Arch's Acres' (4" Line) to serve the proposed Development, provided there are at least 3 hook-up[s] when we get things platted and underway." Arch argues that the language of the contract "to serve the development" is ambiguous and susceptible to more than one meaning to be determined by the trier of fact. Mid-Dakota claims that the agreement is not ambiguous and that it only required Mid-Dakota to install a four-inch waterline to the development if Arch obtained at least three hook-ups. Mid-Dakota claims that the agreement did not obligate it to provide water service to all future sites in Arch's development. The circuit court agreed with Mid-Dakota and determined that the handwritten provision did not obligate Mid-Dakota to provide water service to future sites and that Mid-Dakota's obligation to install a mainline to the development had been fulfilled.

[¶9.]     "'A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract.'" Pesicka v. Pesicka, 2000 SD 137, ¶10, 618 NW2d 725, 727 (quoting Singpiel v. Morris, 1998 SD 86, ¶16, 582 NW2d 715, 719). We only determine a contract to be ambiguous "'when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Id.* (quoting *Singpiel,* 1998 SD 86, ¶16, 582 NW2d at 719).

[¶10.]    The agreement here consists of one sentence in which Mid-Dakota agreed "to do a Mainline Extension to 'Arch's Acres' (4" Line) to serve the proposed Development." The agreement clause, "to serve the Development," cannot be interpreted to mean that Mid-Dakota would furnish *water* to all the home sites in Arch's development. The contract to deliver *water* is provided for in the separate Water User Agreement. Further, Arch only entered into two of the three promised Water User Agreements for hookups. In the Water User Agreement, the user agrees to purchase a hook-up and water, and Mid-Dakota agrees to furnish water under certain terms of payment and other conditions. Consequently, the agreement that Arch claims has been breached did not provide for the sale and purchase of water. It only provided that Mid-Dakota would install a main waterline to the development, which it did, even though Arch only entered into two of the three promised Water Use Agreements for hook-ups. The trial court did not err in granting summary judgment to Mid-Dakota.

[¶11.]    We affirm.

[¶12.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.