#24995-rev & rem-JKM

**2009 SD 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KERNELBURNER, L.L.C., a
South Dakota Limited Liability
Company, PAUL D. IBURG and
PAUL HOFER, JR.,                                        Plaintiffs and Appellees,

         v.

MITCHHART MANUFACTURING,
INC., a South Dakota Corporation,
SCOTT PAULSON, CHAD CLITES,
MIKE FOKKEN and SCOTT FOKKEN,          Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SEAN M. O'BRIEN
Judge

* * * *

MICHAEL E. UNKE                                    Attorney for plaintiffs
Salem, South Dakota                                and appellees.

MIKE C. FINK                                          Attorney for defendants
Bridgewater, South Dakota                       and appellants.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2009

OPINION FILED **05/06/09**

MEIERHENRY, Justice

[¶1.]        Kernelburner, LLC, Paul Iburg and Paul Hofer, Jr. (collectively Sellers) initiated an action for breach of contract against MitchHart Manufacturing, Inc., Scott Paulson, Chad Clites, Mike Fokken, and Scott Fokken (collectively Buyers) for failure to pay the final payment of $89,039.26 on an installment purchase agreement.  Buyers counterclaimed for breach of contract, conversion, fraudulent misrepresentation, and negligent misrepresentation.  The trial court found in favor of the Sellers.

[¶2.]        Sellers started Kernelburner, LLC, in 2001.  Kernelburner is in the business of manufacturing corn-burning furnaces and corn-burning water boilers based on a design known as A-Maize-Ing Heat Furnace and Boiler.  Buyers are shareholders of MitchHart Manufacturing, Inc.  Buyers worked as subcontractors for Kernelburner prior to the purchase of the company.  In late 2005, the parties negotiated for the sale of Kernelburner.

[¶3.]        The parties signed a letter of intent on February 14, 2006, and an installment purchase agreement on June 12, 2006.  Both documents indicated Buyers would take possession and control of the company on January 1, 2006.  Buyers were to receive the inventory and other assets as well as liabilities for the company.

[¶4.]        The parties agreed to a $300,000 purchase price for Kernelburner.  The Buyers made a $20,000 down payment on the purchase price, drawn from Kernelburner's line of credit at First Dakota National Bank.  Sellers received $180,000 on the date of closing, June 12, 2006.  The Buyers were also to make a

payment of $30,000 to Sellers on November 1, 2006, and a final payment of $89,039.26 on February 1, 2007. Buyers withheld the final payment to offset the Sellers' alleged failure to pay for all debts and expenses incurred on or prior to January 1, 2006, as required by the installment purchase agreement.

[¶5.] The installment purchase agreement, Section Six (k) required that "[a]ll trade debt, expenses, accounts payable and other liabilities incurred by the business on or prior to January 1, 2006, will be paid by Seller." Section Nine (a) of the installment purchase agreement required:

> Indemnification of Buyer by Seller. Except as otherwise set forth in this Agreement, Buyer is not assuming any liability of the Seller. *Seller shall and hereby agrees to indemnify and hold Buyer harmless* against any of the following:
> * * *
> All trade debts, liabilities and obligations of the Seller of any nature including, but not limited to, any actions, suits, proceedings, demands, assessments, adjustments, costs, expenses and attorney fees, whether accrued, absolute, contingent, now known or unknown on the closing date, existing or arising on or resulting from events which occurred or failed to occur on or before January 1, 2006 to the extent not specifically assumed by Buyer hereunder.

(Emphasis added.)

[¶6.] The trial court concluded that the contract was ambiguous and, therefore, allowed the introduction of parol evidence. The court concluded that the parties entered into an enforceable promise when the parties signed the letter of intent on February 14, 2006, and the installment purchase agreement on June 12, 2006. After considering the letter of intent and the parties' course of dealing in conjunction with the installment purchase agreement, the trial court concluded that Buyers breached the contract by failing to remit the final payment. The two issues

on appeal are (1) whether the agreement between the parties is ambiguous, and (2) whether the Buyers, rather than the Sellers, breached the contract.

[¶7.] We first address the issue of contract ambiguity. "'[T]he interpretation of a contract is a question of law, which is reviewed de novo.'" Arch v. Mid-Dakota Rural Water System, 2008 SD 122, ¶7, 759 NW2d 280, 282 (quoting A-G-E Corp. v. State, 2006 SD 66, ¶15, 719 NW2d 780, 786). "We only determine a contract to be ambiguous 'when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" Id. ¶9 (quoting Pesicka v. Pesicka, 2000 SD 137, ¶10, 618 NW2d 725, 727). "'When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply.'" Vander Heide v. Boke Ranch, Inc., 2007 SD 69, ¶17, 736 NW2d 824, 831-32 (quoting Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶14, 709 NW2d 350, 354). If the contract is plain and unambiguous "extrinsic evidence is not considered because the intent of the parties can be derived from within the four corners of the contract." Id. ¶37 (citing Spring Brook Acres Water Users Ass'n, Inc. v. George, 505 NW2d 778, 780 n2 (SD 1993)).

[¶8.] The Sellers contend that the language in the installment purchase agreement was ambiguous because it included a provision that was not in the letter of intent. Namely, the purchase agreement provision that required the seller to pay "all trade debt, expenses, accounts payable and other liabilities incurred by the business on or prior to January 1, 2006" was not specified in the letter of intent. Sellers also claim that the purchase agreement was ambiguous because possession

and closing was to be effective January 1, 2006, and the closing did not occur on January 1, 2006. They further claim ambiguity because the agreement failed to set a date to establish inventory value.

[¶9.]     The letter of intent included a provision that "the parties would enter into a definitive Asset Purchase Agreement." The provision was as follows:

> Although it is intended that this Letter of Intent is a binding commitment to purchase and sell the assets described herein, *the parties shall enter into a definitive Asset Purchase Agreement* containing representations and warranties, covenants, indemnities and other terms and conditions consistent with those terms set forth in this Agreement and customary for a transaction of this nature.

(Emphasis added.) Consequently, the "definitive" agreement between the parties became the purchase agreement, which was an installment purchase agreement. The clear language of the purchase agreement required that "[a]ll trade debt, expenses, accounts payable and other liabilities incurred by the business on or prior to January 1, 2006, will be paid by Seller." *See supra* ¶5. Nevertheless, the trial court found ambiguity because "[t]he installment purchase agreement [was] the only document that addressed liabilities incurred prior to January 1, 2006." The court then looked to parol evidence of the knowledge and dealings of the parties prior to and after January 1, 2006, and between the time they signed the letter of intent and the time they signed the purchase agreement. The court then found that the Buyers had breached the contract based on the parol evidence.

[¶10.]     The trial court erroneously determined that the purchase agreement was ambiguous because it contained language not contained in the letter of intent. The purchase agreement was the definitive agreement between the parties, and the

terms in the purchase agreement controlled the transaction. Since the language was clear on its face, it is enforceable. The Sellers agreed:

> [T]o indemnify and hold Buyer harmless against * * * [a]ll trade debts, liabilities and obligations of the Seller of any nature . . . whether accrued, absolute, contingent, now known or unknown on the closing date, existing or arising on or resulting from events which occurred or failed to occur on or before January 1, 2006 to the extent not specifically assumed by Buyer hereunder.

*See supra* ¶5. It is not necessary to go beyond the four corners of the document to determine the parties' intent. *See Vander Heide*, 2007 SD 69, ¶17, 736 NW2d at 831-32 (quoting *Ziegler Furniture and Funeral Home, Inc.*, 2006 SD 6, ¶14, 709 NW2d at 354). Consequently, the trial court erroneously considered parol evidence.

[¶11.] Sellers claim they were unaware of the provision because they did not read the installment purchase agreement before signing it. Sellers contend that had they known that the agreement held them responsible for debts incurred on or prior to January 1, 2006, they would not have signed the agreement. "'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to *allow him to admit that he signed it but did not read it* or know its stipulations would absolutely destroy the value of all contracts.'" LPN Trust v. Farrar Outdoor Advertising, Inc., 1996 SD 97, ¶13, 552 NW2d 796, 799 (emphasis added) (quoting 17A AmJur2d *Contracts* §§ 224-228 (1991)); *see also* Scotland Vet Supply v. ABA Recovery Serv., Inc., 1998 SD 103, ¶9, 583 NW2d 834, 836 (citation omitted). If the Sellers neglected their legal duty to read the contract before signing it, the Sellers may not now use the failure to read the contract to excuse performance of unambiguous terms. Because the trial court

#24995

erred in finding the contract ambiguous, the matter is reversed and remanded for further proceedings consistent with this opinion.

[¶12.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.