**Agnes S. STEFFENS, formerly Agnes S. Peterson, Plaintiff and Appellant,**

v.

**Kenneth B. PETERSON, Defendant and Appellee.**

No. 17881.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1992.

Decided July 7, 1993.

Karen L. Crew, Crew & Crew, Sioux Falls, for plaintiff and appellant.

Richard A. Johnson, Strange, Farrell, Johnson & Casey, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

Agnes S. Steffens (Agnes) appeals from an order and judgment terminating her former husband's alimony obligation retroactively to the date of her remarriage, reducing his child support obligation, and allowing him to deduct $250.00 per month from his child support obligation for thirty months to recover alimony payments made after Agnes' remarriage. We affirm in part and reverse in part.

## FACTS

Kenneth B. Peterson (Kenneth) and Agnes were married on January 16, 1971 and divorced on May 18, 1989. During the course of their marriage, Kenneth and Agnes had five children. Four of the children were minors at the time of the divorce.

Kenneth and Agnes married while they were both juniors in high school, and both graduated the following year. Thereafter, Kenneth obtained both a college and a medical school education, completing his M.D. degree in 1980. Following graduation from medical school, Kenneth served six years as a doctor in the Army Medical Corps and then joined the Brown Clinic in Watertown, South Dakota, as a family practice doctor. Agnes did not pursue any education or training beyond her high school degree since she was performing the work of a mother and homemaker.

Both prior and subsequent to the filing of the divorce action, Kenneth and Agnes discussed the issues of the divorce. The discussions resulted in a Property and Marital Settlement Agreement (Agreement) which both parties signed and the trial court incorporated into the judgment and decree of divorce. The Agreement provided for division of personal property and debts, disposition of the marital home, child support and custody, and alimony payments.

Kenneth and Agnes agreed to joint legal custody of the four children who were minors at the time of the divorce. Agnes assumed physical custody of the two minor daughters, Abigail and Rebekka; Kenneth assumed physical custody of the two minor sons, Anders and Bradley. Abigail has since reached the age of majority.

Pursuant to the Agreement, Kenneth was required to pay Agnes $500.00 per month per child, not to exceed the sum of $1,000.00 per month, for the support and maintenance of the parties' minor children residing with Agnes from April 1, 1989 until and including June 1, 1991. Thereafter, from July 1, 1991 until and including June 1, 2000, Kenneth was required to pay $650.00 per month for the support and maintenance of Rebekka. Agnes was not required to contribute for the support of the two children in Kenneth's custody. Neither Kenneth nor Agnes relied on the South Dakota support guidelines in establishing the agreed upon support levels. Kenneth has remained current in his support payments to Agnes.

The Agreement also required Kenneth to pay alimony to Agnes. The payment of alimony as set out in Paragraph 16 of the Agreement reads:

16. Defendant agrees and shall pay to Plaintiff [for full and complete distribution and settlement of all equity assets and] as rehabilitation alimony, the sum of Seven Hundred and Fifty Dollars ($750.00) per month, commencing on the 1st day of April, 1989, and on the first day of each month thereafter up through and including June 1, 1991; the sum of Six Hundred Dollars ($600.00) per month commencing on the 1st day of July, 1991 and on the 1st day of each month thereafter up through and including June 1, 1994; and thereafter, Defendant agrees to pay to Plaintiff, as rehabilitation alimony only, the sum of Three Hundred and Fifty Dollars ($350.00) per month, commencing July 1, 1994, and on the first day of each month thereafter up through and including June 1, 2000. (Bracketed portion crossed out and initialed by the parties).

As noted, the parties crossed out and initialed the portion that reads, "for full and complete distribution and settlement of all equity assets and." The change was acknowledged by the parties on May 17, 1989, the day before the judgment and decree of divorce was issued.

Kenneth paid Agnes $750.00 per month in alimony through June 1, 1991, as required by the Agreement. Thereafter, pursuant to the Agreement, Kenneth paid Agnes $600.00 per month until November, 1991 when, without the benefit of an appropriate court order, he discontinued the payments as a result of Agnes' remarriage in December, 1990. All alimony payments made by Kenneth were treated as such by

both Kenneth and Agnes on their tax returns.

On August 5, 1991, Kenneth, by affidavit and application for an order to show cause, sought termination of his alimony obligation and a reduction in his child support obligation. The trial court issued an order to show cause and a show cause hearing was held on November 12, 1991. The trial court entered its findings of fact and conclusions of law and an order and judgment on January 29, 1992. The order and judgement granted Kenneth's request to terminate alimony retroactively to the date of Agnes' remarriage, established Kenneth's child support obligation at $751.60 per month, and allowed Kenneth to reduce his monthly child support payments by $250.00 per month for thirty months in order to recover his overpayment of alimony. Agnes appeals.

## ISSUES

1) Whether Kenneth B. Peterson's child support obligation should be reduced to $751.60 per month?

2) Whether Kenneth B. Peterson's alimony obligation is subject to termination?

3) Whether Kenneth B. Peterson's alimony obligation should be determined retroactively to the date of Agnes S. Steffens' remarriage?

4) Whether Kenneth B. Peterson should be allowed to reduce his child support payments by $250.00 per month for 30 months to recover overpayment of alimony as determined by the court?

5) Whether Agnes S. Steffens is entitled to recover her attorney fees and expenses in the trial court from Kenneth B. Peterson?

## ANALYSIS

■ We will not disturb an award of alimony or child support, or a division of property, unless the trial court clearly abused its discretion. *Peterson v. Peterson*, 434 N.W.2d 732, 734 (S.D.1989). We do not determine whether we would have made an original like ruling, but whether

" 'a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.' " *Id.* (quoting *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988)). We apply these standards in our analysis of the following issues.

### 1. Reduction of Child Support Award

■ Agnes first alleges that the trial court incorrectly calculated Kenneth's net monthly income thereby making his monthly child support obligation too small. However, while Agnes shows the court her own calculations of Kenneth's net monthly income, she fails to in any way explain why the trial court's calculations are in error.

Both Agnes and the trial court begin their calculations of Kenneth's net monthly income with the same gross monthly figure of $9,939.08. However, the trial court deducts $896.10 for Social Security/Medicare while Agnes deducts only $599.89. Likewise, the trial court deducts $3,068.78 for federal income tax, whereas Agnes deducts only $2,707.10. While Agnes furnishes computations for her differing figures and states that the trial court's "figures are incorrect," she fails to explain *why* or *how* the trial court's calculations are in error. We are not in a position to recalculate Kenneth's net monthly income in an effort to explain the difference between Agnes' and the court's figures and decline to do so. Because Agnes does not demonstrate why the trial court's calculations are in error, we are not left with a "definite and firm conviction that a mistake has been made." *In re Proceedings for Deposit in Court*, 417 N.W.2d 187, 188 (S.D.1987). We thus affirm the trial court's findings as to Kenneth's net monthly income.

■ Likewise, we do not find, nor does Agnes argue, that the trial court misapplied the child support guidelines once Kenneth's net monthly income was determined. The trial court determined Kenneth's net monthly income to be $5,974.20 and Agnes' to be $843.40. The combined monthly incomes total $6,817.60 and exceed the maximum amount listed on the child support obligation schedule found at SDCL 25–7–

6.2. Using an acceptable method of calculating child support, the trial court found the parties' income to be 170% of the top income ($4000.00) listed on the support guideline table. Based on that extrapolation, the trial court made the following calculations:

| | | |
|---|---|---|
| Father's net monthly income | $5,974.20 | (88%) |
| Mother's net monthly income | $ 843.40 | (12%) |
| Total net monthly income | $6,817.60 | |

Monthly support obligation for one child
    (170% of $637) = $1,082.90
Monthly support obligation for two children
    (170% of $987) = $1,677.90
Mother's obligation for two children residing with Father
    (12% of $1,677.90) = $ 201.35
Father's obligation for one child residing with Mother
    (88% of $1,082.90) = $ 952.95
Father's net obligation after reducing for Mother's obligation
    ($952.95 − $201.35) = $ 751.60

---

This court will overturn a trial court's findings of fact only when they are clearly erroneous. *Id.* After reviewing the trial court's calculations, we are not "left with a definite and firm conviction that a mistake has been made." *Id.* We therefore affirm the trial court's determination of $751.60 as the appropriate amount of child support.

2. *Termination of Alimony for Remarriage*

■ Agnes contends that the trial court erred in terminating her alimony because the payments represent a gross alimony payment which was payable in installments or, if not that, the alimony awarded was part and parcel of the property division negotiated between the parties. In either case, Agnes alleges that the alimony payments are therefore not subject to termination.

■ There is no question but what remarriage can impact a party's right to continue receiving alimony. The court held in *Marquardt v. Marquardt by Rempfer*, 396 N.W.2d 753, 754 (S.D.1986) (quoting *Bauer v. Bauer*, 356 N.W.2d 897, 898 (N.D.1984)) that " '[p]roof that the spouse receiving spousal support payments has remarried establishes a *prima facie* case requiring the court to terminate the support payments unless there are extraordinary circumstances which justify continuance of the payments.' " A remarriage does not automatically terminate alimony, but places the burden of proving the existence of extraordinary circumstances warranting continuation of alimony payments on the spouse receiving same. *Marquardt*, 396 N.W.2d at 754 (citing *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985)).

■ Agnes argues that the agreement negotiated as the property settlement agreement by the parties is ambiguous as it relates to this alimony issue. A trial court, when asked to interpret a property settlement agreement incorporated into a divorce decree, applies contract principles. *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980). One of these principles of construction is that a court should, if possible, ascertain and enforce the mutual intention of the parties as set forth in their agreement. *Id.* at 778. The parties deleted the following words from the executed agreement, "for full and complete distribution and settlements of all equity assets and," which left Paragraph 16 of their agreement to read "Defendant (Kenneth) agrees and shall pay to Plaintiff (Agnes) as *rehabilitation alimony ....*" (Emphasis added.) In reviewing the total agreement, Paragraphs 13, 14, 15 and 17 provided for the division of personal property, the marital home, and the parties' debts. In fact, this record discloses that the parties treated these payments as alimony for income tax purposes. The trial court was correct in holding that the parties' intention as evidenced by this

unambiguous agreement was to limit Paragraph 16 to alimony.

■ Agnes next argues that the alimony, if not part of the property settlement, was a lump-sum award which is not modifiable even if to be paid in installments. *Holt v. Holt,* 84 S.D. 671, 674, 176 N.W.2d 51, 53 (1970). Other than alimony being terminated at a fixed point in time, the agreement is devoid of any language establishing a lump-sum distribution to be paid in installments. Rather, this agreement clearly states that Kenneth was to pay Agnes rehabilitative alimony in decreasing amounts over the years as she gained financial independence. This agreement simply awards Agnes what it is purported to provide for her—rehabilitative alimony and clearly does not show an intention on the part of these parties to provide for nonmodifiable lump-sum alimony award.

Agnes failed to present any evidence to establish extraordinary circumstances requiring a continuation of her alimony payments after the filing of Kenneth's petition for modification and the trial court did not err in terminating her alimony after this date.

### 3. Retroactive Termination of Alimony

■ Agnes next contends that the trial court erred when it terminated her alimony retroactively to the date of her remarriage. This court has never addressed the retroactive termination of alimony payments. We have stated that an alimony award "may be modified to retroactively abate all or part of alimony *arrearages.*" *Thomerson v. Thomerson,* 387 N.W.2d 509, 514 (S.D. 1986) (emphasis added). However, we have never directly addressed the retroactive modification of alimony where the paying spouse has voluntarily remained current in his monthly payments notwithstanding knowledge of his ex-spouse's remarriage.

■ We note by analogy that past-due support payments are not retroactively modifiable under SDCL 25–7–7.3 except for that period in which a petition for modification is pending. *See Kier v. Kier,* 454 N.W.2d 544, 546 (S.D.1990) (past-due child support); *Vellinga v. Vellinga,* 442 N.W.2d 472, 474 (S.D.1989) (past-due child support). Support payments, such as alimony, become final judgments as they fall due. SDCL 25–7–7.4.

The decree, as originally entered stood as a finality between the parties until the power of the court was invoked to make changes and modifications. These changes and modifications could only be made when the conditions and circumstances had changed. There was no power in the court to vacate any portion of the original decree so as to destroy vested rights. The court, therefore, had no power, no authority or right, under the law, to divest the plaintiff of that of which she had become invested by reason of the former decree.

*Delbridge v. Sears,* 179 Iowa 526, 160 N.W. 218, 220 (1916). Thus, those alimony payments which fell due prior to the filing for modification were vested, since South Dakota has not held that remarriage automatically terminates alimony.

■ The record discloses that approximately one year had passed between Agnes' remarriage in Watertown and Kenneth's filing for termination of alimony. Kenneth does not allege that he was unaware of Agnes' remarriage until the time of his filing or that she fraudulently caused him to believe she had not remarried. Kenneth has shown no reason for waiting to file his request for modification or termination of alimony. Support payments made prior to a petition for modification were recovered under the previous divorce decree and thus vested in the supported spouse until the power of the court is invoked to modify the original decree. SDCL 25–7–7.4; *Delbridge,* 160 N.W. at 220. We accordingly hold that under these facts the alimony payments made by Kenneth prior to his filing of the petition, are not modifiable retroactively, but any payments made thereafter are retroactively modifiable. Therefore, Kenneth's alimony obligation should have been terminated as of his August 5, 1991, filing date and Agnes will be obligated to reimburse Kenneth for the alimony payments he made between the filing

date, August 5, 1991, and November, 1991, when he ceased making alimony payments.

### 4. Reduction of Child Support for Recovery of Alimony

■ As a result of holding that Kenneth's alimony obligation is partially retroactively terminable, he is entitled to recovery of overpayment from Agnes. We do note that child support and alimony are distinct concepts with different intended beneficiaries. Reducing child support payments to compensate for an overpayment of alimony equates to "robbing Peter to pay Paul." Child support awards must remain within the guidelines established by SDCL 25-7-6.2. They may not be reduced to redress the overpayment of an obligation, such as alimony, that is distinct from child support. We have provided above for the entry of judgment for Kenneth against Agnes for the retroactively terminable overpayment.

### 5. Attorney Fees

■ The allowance of attorney fees in domestic relations cases rests in the sound discretion of the trial court and will not be reversed absent a showing of a clear abuse of discretion. *Whalen v. Whalen*, 490 N.W.2d 276, 284 (S.D.1992) (citing *Shoop v. Shoop*, 460 N.W.2d 721, 726 (S.D.1990)).

> In exercising its discretion, a court must follow a two step procedure. First, the court must determine what constitutes a reasonable attorney fee. Second, the court must determine what portion of that fee should be paid by the opposing party. The second step requires a consideration of the parties relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Shoop*, 460 N.W.2d at 726 (citations omitted). *See also Prentice v. Prentice*, 322 N.W.2d 880, 883 (S.D.1982). In its findings of fact, the trial court found the attorney fees to be reasonable, considered the factors for awarding attorney fees cited in *Prentice*, and determined neither party was entitled to an award of attorney fees.

As set forth above, the parties do have a large discrepancy between their incomes. However, Kenneth's financial worth is significantly reduced as he has assumed the majority of the parties' debts and expenses including health insurance and expenses for the children, college education expenses of the children, life insurance, mortgages and automobile loans, and outstanding indebtedness at the time of divorce. In addition, we find no evidence of a disparity in liquidity of each party's assets nor any evidence that either party unreasonably increased the time spent on the case. Therefore, we find the trial court did not abuse its discretion in denying Agnes' request for attorney fees.

The order of the trial court is affirmed as to child support, termination of alimony, and attorney fees, and reversed as to the retroactive termination of alimony and the consequential reduction of child support.

MILLER, C.J., and HENDERSON and WUEST, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part, dissenting in part).

I concur in all respects except that I would award appellate attorney fees to Agnes of $1,000.00 based on the factors of *Storm v. Storm*, 400 N.W.2d 457, 458 (S.D. 1987) and *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985).