#27740-a-DG
**2016 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JASON VANDYKE,                                    Plaintiff and Appellee,

    vs.

JIEUN CHOI,                                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT GUSINSKY
Judge

* * * *

ROBERT D. PASQUALUCCI
Rapid City, South Dakota                          Attorney for plaintiff
                                                  and appellee.


DOYLE D. ESTES of
Estes Campbell Law Firm
Rapid City, South Dakota                          Attorneys for defendant
                                                  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016
OPINION FILED **12/14/16**

#27740

GILBERTSON, Chief Justice

[¶1.]    Jieun Choi raises in her appeal the issue of whether the trial court erred in modifying an award of alimony. Choi and Jason Vandyke were briefly married from January 2, 2013, until September 23, 2014, divorcing due to irreconcilable differences. On September 23, 2014, the court held a default divorce hearing, during which Vandyke stated that he had prepared—subject to alterations made by Choi's counsel—a Stipulation and Settlement Agreement (Agreement). The Agreement provided for alimony in the form of 19 payments of $1,500 a month to Choi. Commencement of alimony required Choi to vacate the marital home and execute a quitclaim deed against the property in favor of Vandyke. The Agreement was incorporated into the decree of divorce.

[¶2.]    Vandyke, after making 14 of the 19 payments, sought termination of alimony upon discovering that Choi had been employed fulltime by Black Hills State University. On November 11, 2015, a motion hearing was held, and Vandyke testified that the alimony was intended to support Choi while she sought employment. The court ordered termination of alimony, finding the payments excessive given Choi's financial circumstances and ability to work. Choi appeals the trial court's ruling to terminate alimony payments, arguing that the alimony was either an unmodifiable lump-sum award payable in installments over a fixed period or part of a division of property. Choi also requests appellate attorney fees. We affirm.

## BACKGROUND

[¶3.]     Jieun Choi and Jason Vandyke married on January 2, 2013, in Abilene, Texas. Within a month of their marriage, the two considered an annulment. Choi and Vandyke eventually decided to divorce on grounds of irreconcilable differences. A Stipulation and Settlement Agreement was drafted and signed by both parties in July 2014, and the court entered a decree of divorce incorporating the document on September 23, 2014. The Agreement contained a clause labeled "Property Settlement," which provided:

> 1.     Wife shall have a right to remain in the marital residence until Husband begins payment of alimony as described in Paragraph (3) below. Upon commencement of alimony payments, Wife shall execute a Quit Claim Deed to said real property in favor of Husband.
>
> 2.     Upon execution of the Quit Claim Deed, Wife will not be held financially liable for any debts, liabilities, fees, costs, or other expenses associated with the aforesaid real property.

Another clause, labeled "Alimony (Spousal Support)," provided:

> Wife shall receive alimony from Husband in the amount of $1,500 each month for a period of 19 consecutive months, or until remarriage/cohabitation of Wife or the death of either party. In order to effectuate this payment, Husband shall establish an allotment through the Defense Finance and Accounting Service via the Finance office of the military base at which he is stationed. Alimony is tax deductible to the spouse paying it and taxable income to the spouse receiving it.

Choi was unemployed at the time of the divorce. In a financial affidavit dated July 28, 2014, Vandyke deducted $1,500 in spousal support from his federal income taxes.

[¶4.]     On September 23, 2014, the trial court held a default divorce hearing, where Choi furnished the Agreement signed by both parties. The court asked

whether Vandyke would accept the Agreement. Vandyke responded that he did not "fully agree with it" and requested to withdraw from it. Vandyke testified that, although he drafted the agreement himself and had it reviewed by legal counsel at the Air Force base where he worked, it was later modified to his dissatisfaction by Doyle Estes, an attorney and friend of Choi's. According to Vandyke, the Agreement remained largely the same, but he disagreed with the spousal support provided in the Agreement. Vandyke stated that he feared a prolonged legal fight with Choi based on her communications to him, however, and signed it. The trial court granted Vandyke's motion to withdraw from the Agreement, but cautioned him that the costs of litigation would likely exceed the amount Vandyke then owed to Choi. Vandyke then rescinded his request to withdraw, stating, "in that case, much to [Choi's] delight, I will stick with the one that's filed."

[¶5.] Vandyke later learned that Choi had obtained employment at Black Hills State University, prompting him to seek termination of alimony payments. At a motions hearing on November 11, 2015, Vandyke testified that he signed the Agreement under the belief that "it would have been more detrimental to remain married to [Choi] throughout [his] deployment overseas," which was scheduled to begin less than two weeks after the September 23 hearing. Vandyke also stated that the alimony was intended to provide Choi "support during the time that [Vandyke] expected it to take her to actually find a job[.]" Vandyke believed Choi would encounter difficulty obtaining employment because she "hadn't been working and would take some time to find a job . . . [and because] she was just getting over or still getting over her divorce from her first husband and [Vandyke] saw the

emotional state that it put her in." Under cross-examination conducted by Estes, Vandyke reiterated that he had prepared the Agreement, albeit "[w]ith a lot of input from [Estes]." The court, after listening to the evidence and reviewing the affidavits, found that the alimony was designed to "give [Choi] a leg up to find employment" and indicated that a change in circumstances warranting a modification occurred when Choi obtained employment at Black Hills State University.

[¶6.] On November 13, 2015, Choi filed an affidavit in support of alimony. Choi contended that the alimony payments were not contingent on her being unemployed. Moreover, she was no longer employed at Black Hills State University because she had grown ill. Although she obtained a subsequent job at Rapid City Regional Hospital, the work was too demanding given her physical condition, forcing her to quit. Incurring even further medical expenses due to treatment for a second illness, Choi found herself in debt and unemployed, although she was then seeking employment with the military. Choi currently lives in the home of her married friends. On November 17, 2015, Choi filed a supplement to her affidavit. She argued that alimony was conditioned solely on her leaving the marital residence and executing the quit claim deed, which she had.

[¶7.] On December 3, 2015, Choi filed a brief in support of her proposed findings of fact and conclusions of law. Choi made two arguments. First, she argued that the Agreement provided for a lump-sum distribution payable in gross or in installments and that under South Dakota law, modification under a change of circumstances standard was impermissible. Second, she argued in the alternative

that alimony is unmodifiable when it is part of a property settlement, as she claimed it was here. Choi contended that her signing the quitclaim deed in return for alimony was a settlement in lieu of a property division.

[¶8.] The trial court entered its findings of fact and conclusions of law on December 19, 2015. The court reiterated its belief that a change of circumstances occurred when Choi found employment at Black Hills State University. It noted that her termination from the position resulted partly "due to her own actions" and that "nothing in the record reflects that she is incapable of securing meaningful full time employment." The court thus terminated alimony. Choi appeals.

**STANDARD OF REVIEW**

[¶9.] A trial court's award of alimony is reviewed for abuse of discretion. *Dejong v. Dejong*, 2003 S.D. 77, ¶ 5, 666 N.W.2d 464, 467. "An abuse of discretion is 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822 (quoting *Laird v. Laird*, 2002 S.D. 99, ¶ 13, 650 N.W.2d 296, 299). "That discretion is not altered by the fact that the original judgment was based upon an agreement of the parties." *Olson v. Olson*, 1996 S.D. 90, ¶ 10, 552 N.W.2d 396, 399. "'Contractual stipulations in divorce proceedings are governed by the law of contracts.'" *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726 (quoting *Houser v. Houser*, 535 N.W.2d 882, 884 (S.D. 1995)). "The interpretation of a contract is a question of law and is reviewed de novo." *Id.* The rules of construction apply only if the meaning of a contract's language is ambiguous. *Id.* "'Whether the language of a

contract is ambiguous is . . . a question of law.'" *Id.* (quoting *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D. 1986)).

## DECISION

**1.     Whether the trial court erred in not treating the alimony award as a lump-sum distribution payable in installments over a fixed period.**

[¶10.]     Choi first contends that the alimony award is an unmodifiable lump-sum distribution payable in installments over a fixed period. Under South Dakota law, alimony normally may be reduced or eliminated based on a change of circumstances existing at the time of the original decree, and such a change need not be substantial. *Horton v. Horton*, 503 N.W.2d 248, 252 (S.D. 1993). Whether or not the original decree was equitable, the role of the court in modifying alimony is "not to relieve a party of his or her bad bargain." *Olson*, 1996 S.D. 90, ¶ 11, 552 N.W.2d at 399. However, not all types of alimony may be modified. Although a trial court may adjust permanent alimony payments, it cannot make modifications to "lump-sum" awards, whether payable all at once or in installments over a fixed period. *Saxvik v. Saxvik*, 1996 S.D. 18, ¶ 13, 544 N.W.2d 177, 180.[1] In *Holt v. Holt*,

---

1.     A court also may not modify "restitutional" or "reimbursement" alimony, which is provided to reimburse a spouse's marital contribution while the other obtained advance training or education. *Saxvik*, 1996 S.D. 18, ¶ 13, 544 N.W.2d at 180. The issue of whether a court may modify rehabilitative alimony, which provides financial support required for a spouse to refresh or enhance job skills necessary to become self-sufficient, has yet to be decided, although this Court has suggested "it must be considered on a case-by-case basis." *Lowe v. Schwartz*, 2007 S.D. 85, ¶ 13 n.6, 738 N.W.2d 63, 67 n.6; see also *Sanford v. Sanford*, 2005 S.D. 34, ¶ 24 n.5, 694 N.W.2d 283, 291 n.5; *Saxvik*, 1996 S.D. 18, ¶ 13, 544 N.W.2d at 180.

the Court accepted the proposition adopted by the Nebraska Supreme Court in

*Ziegenbein v. Damme*, 292 N.W. 921, 923 (1940):

> Obviously, the purpose of both the court and the parties, in providing for or in accepting a gross allowance of alimony, is to define and fix with finality the scope of the rights and the obligations of the parties. . . . [I]t is our view that an unqualified allowance in gross, in a divorce decree, whether payable immediately in full or periodically in installments, and whether intended solely as a property settlement or as an allowance for support, or both, is such a definite and final adjustment of mutual rights and obligations as to be capable of a present vesting and to constitute an absolute judgment, and the court cannot subsequently modify the amount thereof.

84 S.D. 671, 674-75, 176 N.W.2d 51, 53 (1970); *see also Blare v. Blare*, 302 N.W.2d

787, 790-91 (S.D. 1981). Though distinguishing a lump-sum award of alimony from

a division of property is somewhat difficult, one unique characteristic of a lump-sum

award is that it may be based in part on the fault of a spouse. *Sanford*, 2005 S.D.

34, ¶ 24, 694 N.W.2d at 290. Neither award may be modified, however, nor does the

change of circumstances standard allowing termination of alimony apply. *See*

*Blare*, 302 N.W.2d at 790-91.

[¶11.]     Here, however, the Agreement provided instead for permanent

support. In determining what form an award of alimony has taken, it is "not the

label that is placed on the award that controls, but rather the nature of the award."

*Saxvik*, 1996 S.D. 18, ¶ 16, 544 N.W.2d at 180. "Although [the] specifics [of

permanent alimony] are determined by the facts of the case, common to it are

payments which continue until death of the recipient or some other significant

event such as remarriage, which terminates the need for continuing support."

*Sanford*, 2005 S.D. 34, ¶ 24, 694 N.W.2d at 290. SDCL 25-4-1 also provides that an

award of permanent alimony need not continue throughout the lifetime of the obligee, but may be "for a shorter period, as the court may deem just[.]"

[¶12.] The Agreement required Vandyke to make payments of "$1,500 each month for a period of 19 consecutive months, or until remarriage/cohabitation of Wife or the death of either party." However, "[o]ther than alimony being terminated at a fixed point in time, the agreement is devoid of any language establishing a lump-sum distribution to be paid in installments." *Steffens v. Peterson*, 503 N.W.2d, 254, 259 (S.D. 1993). And like in *Oman v. Oman*, which similarly dealt with a claim that an award of alimony was in the nature of a lump-sum fixed payment, the provision relied upon by Choi does not reference alimony as a lump-sum payment or refer to it as a gross amount payable in installments. The agreement is for a specified monthly amount . . . [I]t is referred to throughout the agreement as 'alimony.'" *Oman v. Oman*, 2005 S.D. 88, ¶ 12, 702 N.W.2d 11, 15.

[¶13.] The presence of conditions terminating alimony also indicates that it was not intended to be a lump-sum distribution payable in installments. The Agreement provides that alimony terminates upon "remarriage/cohabitation of Wife or the death of either party." The presence of conditions like these is typical of an arrangement for permanent alimony. *Sanford*, 2005 S.D. 34, ¶ 24, 694 N.W.2d at 290. But lump-sum awards are "final 'adjustment[s] of mutual rights and obligations as to be capable of a present vesting and . . . absolute judgment.'" *Oman*, 2005 S.D. 88, ¶ 11, 702 N.W.2d at 15 (quoting *Holt*, 84 S.D. at 674-75, 176 N.W.2d at 53). Once vested, the right to payment is not subject to outside contingencies such as remarriage. Conditions that terminate future installments

would defeat the finality that we have said attaches to and distinguishes lump-sum awards. Consequently, as between a lump-sum payable in gross or in installments, this Court makes no distinction. *See Saxvik*, 1996 S.D. 18, ¶ 13, 544 N.W.2d at 180 ("[T]he sum is not modifiable even if it is payable in installments over a fixed period of time."). It cannot be, then, that the Agreement comprehended the payments as part of a lump-sum award, because cohabitation or remarriage divests Choi of her right to an award she would otherwise be able to receive all at once. Therefore, the plain language of the Agreement demonstrates that the alimony was not intended as a lump-sum distribution payable in installments.

### 2. Whether the trial court erred in not treating the award as part of a property division.

[¶14.]     Choi argues in the alternative that, if the alimony award was not a lump-sum distribution payable in installments, then it was provided for as part of a property settlement, thus making it unmodifiable. While some forms of alimony are subject to modification, alimony awarded as part of a division of property is not. *Lien v. Lien* (*Lien II*), 420 N.W.2d 26, 28 (S.D. 1988) (citing *Holt*, 84 S.D. 671, 176 N.W.2d 51). Whether an obligation imposed by a court order incorporating a separation agreement is modifiable depends on whether the obligation is in the nature of support or of property division, and as such the issue results in frequent litigation. 1 Ann. B. Oldfather et al., *Valuation and Distribution of Marital Property* § 4.04, at 4-66 (Matthew Bender ed., 2015). Under South Dakota law, the label given to an award is not dispositive. *See Lien II*, 420 N.W.2d at 29 (holding that an award deemed "support" only at the request and in support of the obligor for the

purpose of providing him a tax benefit was nonetheless clearly part of a property division in spite of its label).

[¶15.] As in *Oman*, "[n]othing in the language of the agreement indicates that alimony was agreed to in lieu of property." *Oman*, 2005 S.D. 88, ¶ 12, 702 N.W.2d at 15. Absent from the Agreement are words like "for full and complete distribution and settlements of all equity assets[.]" *Steffens*, 503 N.W.2d at 258-59 (stating that deletion of such language from an agreement was evidence that alimony was not intended to be part of a property settlement). No language whatsoever indicates any sort of compensatory rationale. And although the use of labels is not dispositive, it is also telling that the alimony clause in the Agreement is titled "Alimony (Spousal Support)."

[¶16.] Failing that, Choi asserts that the Agreement is at least ambiguous, such that a court must apply contract principles, including the rule of construction that ambiguities are to be construed against the drafter. *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 34, 588 N.W.2d 897, 904. But another "of these principles of construction is that a court should, if possible, ascertain and enforce the mutual intention of the parties as set forth in their agreement." *Steffens*, 503 N.W.2d at 258 (citing *Johnson v. Johnson*, 291 N.W.2d 776, 778 (S.D. 1980)). "'A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct.'" *Pesicka*, 2000 S.D. 137, ¶ 8, 618 N.W.2d at 727 (quoting *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235). As the Court in *Pesicka* explained:

> A contract is not rendered ambiguous simply because the parties
> do not agree on its proper construction or their intent upon

> executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated document.

*Id.* ¶ 10 (quoting *Singpiel v. Morris*, 1998 S.D. 86, ¶ 16, 582 N.W.2d 715, 719). "'In determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intentions of the parties.'" *Id.* ¶ 9 (quoting *Singpiel*, 1998 S.D. 86, ¶ 10, 582 N.W.2d at 718). The parties' intention is determined by "'look[ing] to the language the parties used.'" *Id.* (alteration in original). "'If that intention is clearly manifested by the [Agreement], it is the duty of this [C]ourt to enforce it.'" *Id.* (quoting *In re Estate of Stevenson*, 2000 S.D. 24, ¶ 14, 605 N.W.2d 818, 821).

[¶17.] Choi points to the connection between the property settlement and alimony clauses of the Agreement. Together, they provide that once alimony payments commenced, Choi would lose the right to remain in the marital residence and that she would then execute a quit claim deed. But as Vandyke argues, the "execution of the quit claim deed was a quid pro quo condition . . . to guarantee the Appellee could not force her to vacate the residence without the means to support herself." Perfectly in keeping with an award of alimony intentioned on providing support for an ex-spouse, the condition merely provided Choi a buffer of support in the interim before payments began. "Alimony (spousal support) is intended to assist in providing necessities." *Havlik v. Havlik*, 2014 S.D. 84, ¶ 14, 857 N.W.2d 422, 426. Such necessities include housing. *Urbaniak v. Urbaniak*, 2011 S.D. 83, ¶ 27, 807 N.W.2d 621, 628. It is consistent, then, with the aims of alimony that Choi should have been allowed to remain in the marital home until such time as she started receiving financial assistance.

[¶18.]     Additionally, Choi's argument contradicts the intentions expressed in the alimony clause. Although "[i]t is well settled in this state that allowances of alimony and support money for the wife . . . are subject to revision and amendment when conditions change. . . . [T]his rule does not apply insofar as property rights of the parties are concerned," and thus a "property settlement . . . cannot be modified." *Peterson v. Peterson*, 434 N.W.2d. 732, 735 (S.D. 1989). As such, while not always conclusive evidence, *see, e.g.*, *In re Marriage of Lowe*, 427 N.E.2d 1367, 1370-71 (Ill. App. Ct. 1981), courts in other jurisdictions have looked to factors such as whether payments continue after the obligee dies or remarries or if they terminate upon the obligor's death. *See, e.g.*, *Redlin v. Redlin*, 436 N.W.2d 5, 8 (N.D. 1989); *see also* *Sanford*, 2005 S.D. 34, ¶ 24, 694 N.W.2d at 290 ("[C]ommon to [permanent alimony] are payments which continue until death of the recipient or some other significant event such as remarriage[.]"); 1 Oldfather et al., *supra*, § 4.04, at 4-66.2 to -66.3..

[¶19.]     The Agreement provides that alimony terminates upon "remarriage/cohabitation of Wife or the death of either party." As Vandyke contends, it would seem strange for payments made pursuant to a property settlement to end under these conditions. Just as with lump-sum awards payable in installments, rights inuring to a party as part of a property settlement are final. Thus they should be unaffected by whether the party accepts a cash award in gross or payable in installments. *Lien v. Lien* (*Lien I*), 278 N.W.2d 436, 444 (S.D. 1979) (holding that "[e]ach party is entitled to their respective property as of [the time of entry of judgment]" and that any deferred installment payments should bear interest; "otherwise, the wife is not actually receiving the property division to which

the court has determined she is entitled."). The presence of such conditions in the Agreement that could terminate future payments suggests that the provision of alimony was not intended to be a property division.

[¶20.] Moreover, the tax treatment of the payments by Vandyke is indicative of it being alimony. Among other considerations, this Court in *Steffens* examined whether the parties treated the payments made ostensibly as part of a property division as alimony for federal income tax purposes. 503 N.W.2d at 258. Here, the Agreement provides that "[a]limony is tax deductible to the spouse paying it and taxable income to the spouse receiving it." This language suggests that the parties sought to "avoid the adverse tax consequences attendant to a total cash award of property." *Peterson,* 434 N.W.2d at 735. Furthermore, Vandyke did in fact treat the payments as alimony for income tax purposes. Both the language of the divorce decree and the record "disclose[] that the parties treated these payments as alimony for income tax purposes." *Steffens*, 503 N.W.2d at 258. Such evidence falls against Choi's position. *See Oman*, 2005 S.D. 88, ¶ 12, 702 N.W.2d at 15.

[¶21.] Therefore, even if the Agreement is ambiguous, Choi's interpretation is not compelled by the Agreement or the record. Because it is also not a lump-sum distribution payable in installments over a fixed period, the trial court did not err in terminating alimony under a change of circumstances standard.

### 3. Whether the trial court abused its discretion in terminating alimony.

[¶22.] A change of circumstances warranting a termination of alimony occurred when Choi secured employment. "This Court has been very clear about a trial court's ability to modify an alimony award. . . . '[O]nce a court approves an

alimony award, it can modify it.'" *Savage v. Savage*, 2003 S.D. 46, ¶ 13, 661 N.W.2d 762, 765-66 (quoting *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D. 1990)). This Court has consistently ruled that modification is permitted when a change of circumstances has occurred since the time of the original divorce decree[2] and that the change need not be substantial. *Horton*, 503 N.W.2d at 252. "The change in circumstances refers to a change in the necessities of the recipient and the financial ability of the obligor." *Horr v. Horr*, 445 N.W.2d 26, 28 (S.D. 1989). Moreover, a court's discretion to impose a modification is unaffected by an original divorce judgment's incorporation of an agreement by the parties. *Olson*, 1996 S.D. 90, ¶ 10, 552 N.W.2d at 399. "This Court does not sit as a trier of fact and will not disturb the decision of the trial court on questions of alimony . . . unless there is an abuse of discretion." *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D. 1981). Only if such discretion is "'exercised to an end or purpose not justified by, and clearly against, reason and evidence'" will an abuse be found. *Id.* (quoting *Root v. Bingham*, 26 S.D. 118, 120, 128 N.W. 132, 133 (1910)).

[¶23.]     Application of these principles does not draw a conclusion that there has been an abuse of discretion. The trial court found that the Agreement was

---

2.     Factors considered in awarding alimony include:

> (1) the length of the marriage; (2) their respective earning capacities of the parties; (3) their respective financial condition after the property division; (4) their respective age, health and physical conditions; (5) their station in life or social standing; and (6) the relative fault of the parties in the termination of the marriage.

*Guindon v. Guindon*, 256 N.W.2d 894, 898 (S.D. 1977).

intended to help give Choi a "leg up" on finding employment, which is consistent with the aims of permanent alimony. Choi was unemployed at the time of the divorce, and she subsequently obtained meaningful employment at both Black Hills State University and Rapid City Regional Hospital. Although Choi claimed to be unemployed at the motion hearing, the trial court found no evidence that Choi was incapable of working. The court noted an inconsistency between Choi's statements regarding her inability to work and her search for employment with the Air Force and Navy. The trial court also found "the length of the marriage . . . to be overwhelmingly relevant in this case" (stating that, "quite frankly . . . 99.9 percent of the time the length of the marriage would not cause this [c]ourt to grant anybody alimony" in the first place). Therefore, in light of the law and circumstances, the trial court did not abuse its discretion.

### 4. Whether Choi should be awarded appellate attorney fees.

[¶24.] Choi also requests appellate attorney fees pursuant to SDCL 15-2A-87.3, which permits an award "'only where such fees are permissible at the trial level.'" *Grynberg Expl. Corp. v. Puckett*, 2004 S.D. 77, ¶ 33, 682 N.W.2d 317, 324 (quoting *Hentz v. City of Spearfish, Dep't of Pub. Works, Office of Planning & Zoning*, 2002 S.D. 74, ¶ 13, 648 N.W.2d 338, 342). SDCL 15-17-38 provides that "if appropriate, in the interests of justice, [the trial court] may award payment of attorneys' fees in all cases of . . . support, or alimony." In considering whether to grant attorney fees and in what amount, we follow a two-step approach. First, we compare "the property owned by each of the parties, their relative incomes, whether the property is in liquid or fixed assets, and whether the actions of a party

unreasonably increased the time spent on the case." *Hagedorn v. Hagedorn*, 2012 S.D. 72, ¶ 17, 822 N.W.2d 719, 723 (quoting *Voelker v. Voelker*, 520 N.W.2d 903, 908 (S.D. 1994)). Second, we "examine the fee requests from the perspective of whether the party's appellate arguments carried any merit." *Arneson v. Arneson*, 2003 S.D. 125, ¶ 38, 670 N.W.2d 904, 917.

[¶25.] Vandyke's monthly gross income was $6,331 in 2014, and he retained ownership of the marital home. Choi claims to be currently unemployed and in debt due to medical expenses, and she is living in her friends' home. Vandyke, therefore, is in a significantly better position to pay attorney fees. However, as to the second step of our analysis, given our conclusions about the merits of Choi's appeal, we decline to award her attorney fees.

[¶26.] Affirmed.

[¶27.] ZINTER, SEVERSON, and KERN, Justices, concur.

[¶28.] WILBUR, Justice, (concurring in part and dissenting in part).

WILBUR, Justice (concurring in part and dissenting in part).

[¶29.] I agree that the plain language of the Agreement demonstrates that the parties did not intend that the award of alimony be a lump-sum award, payable in installments. However, I believe that the parties intended the alimony award to be part of the division of property, and therefore, the circuit court erred when it modified the award and terminated Vandyke's continuing obligation to pay Choi. The majority opinion concludes otherwise, contending that no language in the Agreement indicates that Choi agreed to alimony in lieu of property and that "[n]o

language whatsoever indicates any sort of compensatory rationale." I disagree. The Agreement contains *both* language indicating that Choi agreed to alimony in lieu of property *and* language that the alimony award was compensatory in nature.

[¶30.]      Prior to the divorce, Choi and Vandyke owned the marital residence together. Under the "Property Settlement" clause of the Agreement, Choi gave up her property interest in the residence in exchange for the payment of alimony as described in the "Alimony (Spousal Support)" clause. This means that under the Agreement (both the Alimony and Property Settlement clauses), Vandyke would receive the marital home, and as compensation and in lieu of property, Choi would receive 19 payments of $1,500. The parties labeled the form of payment as alimony, but the label of the award is not dispositive. *See Lien v. Lein*, 420 N.W.2d 26, 28 (S.D. 1988).

[¶31.]      Nonetheless, according to the majority opinion, the language requiring Choi to leave the marital home and execute a quit claim deed once Vandyke commenced alimony payments shows that the parties intended the alimony award to provide support for the ex-spouse. On the contrary, the language supports that Vandyke agreed to pay Choi 19 payments of $1,500 in exchange for Choi giving up her interest in the marital residence. After the divorce, Choi owned no interest in the home and retained no right to reside there. But she did not give up her interest for nothing. Vandyke agreed to pay Choi 19 payments of $1,500, and until he began making his payments, Choi could continue to reside in the marital home. Similarly, the fact Vandyke treated the payments as alimony for tax purposes shows, contrary to the conference opinion's view, that the parties merely labeled the award as

alimony when it was intended that the award be part of the property division. *See Lien*, 420 N.W.2d at 28 (an award labeled as spousal support to provide husband the tax benefit). Because the alimony award was in reality a property division, I would reverse the circuit court's order terminating alimony. I would also award Choi her request for $5,060.03 in appellate attorney's fees.