#30436-r-SRJ
**2024 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STEVEN CONDRON,                                     Plaintiff and Appellant,

v.

JENNIFER CONDRON,                                 Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

GREGORY T. BREWERS of
Strange, Farrell, Johnson
    & Brewers, P.C.
Sioux Falls, South Dakota                    Attorneys for plaintiff and
                                             appellant.


JASON R. ADAMS of
Tschetter & Adams Law Office, P.C.
Sioux Falls, South Dakota                    Attorneys for defendant and
                                             appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **07/24/24**

#30436

JENSEN, Chief Justice

[¶1.]        Steven and Jennifer Condron were granted a divorce in September 2019.  As part of the divorce decree, the circuit court divided the parties' assets and ordered Steven to pay Jennifer "a combination of permanent and rehabilitative alimony[.]"  Steven was also ordered to pay $3,218 per month in child support.  Three years after the divorce was finalized, Steven petitioned to modify child support.  When determining Steven and Jennifer's respective incomes to calculate child support, the child support referee declined to include in Jennifer's income the alimony payments she was receiving from Steven and refused to exclude those payments from Steven's income because it found the payments were a part of property division rather than an award of alimony.  The circuit court adopted the referee's findings and conclusions.  Steven appeals, arguing that the circuit court erred when it concluded that the monthly alimony payments were a part of the property division and refused to adjust the parties' incomes for these payments in its child support calculation.  We reverse.

**Factual and Procedural Background**

[¶2.]        Steven and Jennifer were married on May 23, 1997.  During their marriage, they became parents to two children.  Steven filed for divorce in 2017.  Following a trial, the court granted Jennifer a divorce on the grounds of adultery on September 16, 2019.

[¶3.]        In dividing property, the court valued the marital assets at $2,904,624 and the marital debt at $2,467,173.  Steven was awarded $2,629,214 in assets and all the marital debt for a net asset award of $162,041.  Jennifer received the

remaining marital assets for a net award of $275,310. The court further stated that "[n]o cash equalizing payment shall be made by [Steven] or [Jennifer] to the other party in this matter."

[¶4.] After dividing the marital assets, the court found that Steven's gross annual income exceeded $1,000,000 as a gastroenterologist. The court also found that Jennifer did not earn any income. The court ordered Steven to pay Jennifer "a combination of permanent and rehabilitative alimony in the amount of $15,000 per month for four years (48 months); and thereafter [Steven] shall pay [Jennifer] permanent alimony in the amount of $11,000 per month until [Jennifer's] death or remarriage or [Steven's] death." The divorce decree further stated:

> This alimony obligation shall be considered separately from any child support and shall continue following Plaintiff's retirement. These alimony payments were considered as part of the Court's overall property division.

[¶5.] The parties stipulated that Jennifer would receive primary physical custody of the children and that Steven would pay Jennifer $3,218 per month in child support. The court adopted the parties' agreement for child custody and support in the judgment and decree of divorce.

[¶6.] On November 28, 2022, Steven filed a petition to modify child support. Steven's petition asserted that his circumstances had substantially changed due to being terminated from his employment at Avera McKennan Hospital, which "significantly reduced" his income.[1] The petition further stated that the parties'

---

1. Steven earlier filed a motion to modify alimony alleging the same grounds for modification of alimony. The alimony motion is still pending before the circuit court.

oldest child would soon be turning 18.[2]  A hearing was scheduled before the child support referee.

[¶7.]         Due to a change in Steven's employment, the referee found that Steven's gross monthly income had reduced to approximately $45,639.42.  The referee further found that Jennifer was still unemployed, despite being capable of working, and calculated her monthly income at the minimum wage amount of $1,638.  The referee found that Steven was paying $15,000 per month in alimony, which would be reduced to $11,000 per month beginning in September 2023.  Despite these findings, the referee declined Steven's request to exclude these payments from his income and include the payments in Jennifer's income for the purpose of calculating child support.  Instead, the referee concluded that the payments were a form of property division.  In doing so, the referee highlighted the language of the divorce decree that the alimony payments were to "be considered separately from any child support obligation and shall continue following [Steven's] retirement.  These alimony payments were considered as part of the Court's overall property division."  Based on its findings and conclusions, the referee calculated the parties' total child support obligation to be $3,651 per month for one child and recommended Steven pay Jennifer the sum of $3,436 per month in child support.

---

2.     The original order for support was entered prior to July 1, 2022, thus Steven was not required to show a change in circumstances since the entry of the original child support order.  *See* SDCL 25-7-6.13 ("All orders for support entered and in effect prior to July 1, 2022, may be modified in accordance with this chapter without requiring a showing of a change in circumstances from the entry of the order.").

[¶8.]     Steven filed objections to the referee's report asserting that the referee failed to consider a deviation from the child support schedules because Jennifer was underemployed due to voluntarily refraining from work. Steven also argued that the "referee failed to acknowledge the alimony payments to [Jennifer] as a source of income, and a reduction of [Steven's] income."

[¶9.]     At the hearing before the circuit court, Steven withdrew his objection concerning a deviation for Jennifer's underemployment but continued to argue that the monthly alimony payments should be deducted from his income and included in Jennifer's income before calculating child support. In rejecting his argument, the court determined that Steven's monthly payments were an "award of [] alimony slash property division[.]" The court further reiterated that at the time it entered the original divorce decree, it "clearly indicated that [the $15,000 per month] award was part of the court's overall property division as well as alimony, and so I don't believe that the referee has made any error in determining that it should [not] be excluded[]" from Steven's income and included in Jennifer's income for child support calculation purposes. The court adopted the referee's findings and recommendations and modified Steven's child support obligation to $3,436 per month.

[¶10.]    Steven appeals and raises a single issue which we restate as follows:

> 1.    Whether the circuit court erred when it concluded that the monthly payment obligations, denominated as alimony, were a part of the property division and unable to be considered when calculating the parent's income for child support.

## Standard of Review

[¶11.]     This Court reviews child support decisions under the abuse of discretion standard. *Kauth v. Bartlett*, 2008 S.D. 20, ¶ 8, 746 N.W.2d 747, 750 (citation omitted). "Findings of fact are reviewed under the clearly erroneous standard." *Roberts v. Roberts*, 2003 S.D. 75, ¶ 8, 666 N.W.2d 477, 480 (citation omitted). "Questions of law, however, are reviewed de novo." *Dahl v. Dahl*, 2007 S.D. 64, ¶ 9, 736 N.W.2d 803, 805 (citation omitted). The question before us of whether the monthly payments were alimony that should have been considered in calculating each party's income for the purpose of child support is a legal determination subject to de novo review.

## Analysis and Decision

[¶12.]     "The parents of a child are jointly and severally obligated for the necessary maintenance, education, and support of the child in accordance with their respective means." SDCL 25-7-6.1. South Dakota utilizes an "income shares method" to calculate child support under which:

> a child support figure is established by adding together the [net monthly] income of both parents and [by] using [a statutory] chart to determine what the proper amount of support is for that income level. The child support is then allocated between . . . both parents in proportion to their relative [net monthly] incomes, with the payment being made by the non-custodial parent to the custodial parent.

*Peterson v. Peterson*, 2000 S.D. 58, ¶ 15, 610 N.W.2d 69, 71 (alterations in original) (citation omitted).

[¶13.]     In calculating each parent's respective income for determining child support, SDCL 25-7-6.3 provides that the "monthly net income of each parent shall

be determined by the parent's gross income less allowable deductions[.]" SDCL 25-7-6.3 further provides a list of sources of income that are includable in each parent's net monthly income calculation. Additionally, SDCL 25-7-6.6 provides that gross income encompasses various sources of income, including "other sources" of income that are "shown on any or all schedules filed as part of the parents' federal income tax returns[.]" SDCL 25-7-6.7 permits certain deductions to be made from each parent's monthly gross income, including "[p]ayments made on other support and maintenance orders."

[¶14.] Applying these statutes, this Court has required alimony payments to be considered in determining the monthly gross income of each parent for the purpose of calculating child support. *See Haanen v. Haanen*, 2009 S.D. 60, ¶ 19, 769 N.W.2d 836, 843; *Peterson*, 2000 S.D. 58, ¶ 15, 610 N.W.2d at 71. We have stated that "[s]ince alimony is a payment for the support and maintenance of a dependent spouse, it is deducted from the payor's gross monthly income as another support and maintenance order." *Peterson*, 2000 S.D. 58, ¶ 16, 610 N.W.2d at 71 (citation omitted). In turn, the income received from permanent alimony must be included in the receiving spouse's gross monthly income. *Id.* at ¶ 26, 610 N.W.2d at 73.[3] Conversely, unless the parents' income does not meet a child's needs, the parents' assets are not considered when calculating child support. SDCL 25-7-6.5.

---

3. Our decision in *Peterson v. Peterson* relied on SDCL 25-7-6.3 and SDCL 25-7-6.6 to conclude that the child support statutes authorized courts to include alimony paid to the recipient spouse when calculating their gross monthly income. *Peterson* reasoned that the sources of income listed by the Legislature in SDCL 25-7-6.3, were "not intended to be exhaustive." 2000 S.D. 58, ¶ 22, 610 N.W.2d 58, 72. *Peterson* further determined that alimony

(continued . . .)

#30436

[¶15.]    Steven argues the circuit court's statement in the child support modification proceeding that it "clearly indicated that [the $15,000 per month] award was part of the court's overall property division as well as alimony" is inconsistent with the court's treatment of these payments during the divorce proceedings and with well-established South Dakota law.  He points out that throughout the divorce proceedings, the court consistently referred to the monthly payments as alimony rather than property division.  He also highlights that the court expressly declined to order any form of equalization payment by either party as a part of the property division.  Since his future earnings did not exist at the time of the divorce, Steven argues that they could not be considered as a part of the property division.

[¶16.]    Jennifer cites *Kolbach v. Kolbach*, 2016 S.D. 30, ¶ 16, 877 N.W.2d 822, 828, to assert that this Court has repeatedly stated that "the court's equitable division of property and spousal support are to be considered jointly because 'an award of more assets can eliminate or reduce the need for spousal support.'"  In

_____

(. . . continued)

payments were also includable as income under SDCL 25-7-6.6 because they are a form of "other sources" of income that the Internal Revenue Code specifically defined as income.  *Id.* at ¶¶ 23–24, 610 N.W.2d at 73.  The Court cited IRC § 61(a)(8), which at the time included "alimony and separate maintenance payments" as "gross income."  *Id.*  IRC § 61(a) was amended in 2017 by Congress and no longer includes alimony as "gross income."  Tax Cuts and Jobs Act of 2017, Pub. L. 115-97, § 11051(b)(1)(A), 131 Stat. 2054, 2089–90.  Despite these changes to the federal tax code, neither party asserts that alimony payments are not includable in the receiving parent's gross monthly income calculation, or that *Peterson* is no longer good law.  In absence of such an argument, we decline to reconsider our decision in *Peterson* since it was also premised on the non-exhaustive list of income includable under SDCL 25-7-6.3.

relying on this principle, Jennifer argues that the court categorized the $15,000 monthly payments as a hybrid of alimony and property settlement. As such, Jennifer claims that the court was correct not to include the monthly payments in her income or reduce them from Steven's income when calculating child support.

[¶17.]     From our review of the divorce decree, it is readily apparent that Steven's monthly payment obligation to Jennifer is alimony rather than a part of property division or a combination of the two. In the decree, the court described the monthly payments as "a combination of permanent and rehabilitative alimony[.]" The decree further referred to these payment obligations as alimony when it stated that "[t]hese *alimony payments* were considered as part of the [c]ourt's overall property division." (Emphasis added). Additionally, the court separately divided all the marital assets and debts and awarded Jennifer a larger net award of property before the court considered any need for future support. In establishing an equitable division of property, the court specifically determined that "[n]o cash equalizing payment shall be made by [Steven] or [Jennifer] to the other party in this matter."

[¶18.]     The circuit court's treatment of the alimony payments as a part of property division is also contrary to our decisions distinguishing between property division and spousal support. In *Oman v. Oman*, this Court rejected a spouse's claim that a monthly payment obligation was a part of the parties' property division and instead determined it to be alimony, subject to future modification. 2005 S.D. 88, ¶¶ 11–13, 702 N.W.2d 11, 15. We reasoned that "[t]he provision on which [the wife] relie[d] [made] no reference to alimony as a lump-sum neither [did] it specify a

gross amount payable in installments. The agreement [was] for a specified monthly amount for a duration of years. It [was] referred to throughout the agreement as 'alimony.' Nothing in the language of the agreement indicate[d] that alimony was agreed to in lieu of property." *Id.* ¶ 12. Similar to our decision in *Oman*, here, there was nothing stated in the decree or at the hearing to indicate that alimony was awarded in lieu of a greater property division award or for anything other than Jennifer's future support.

[¶19.]    In distinguishing between an award of property and spousal support, we have considered not only how the award is labeled but also "the nature of the award." *Vandyke v. Choi*, 2016 S.D. 91, ¶ 11, 888 N.W.2d 557, 563–64 (quoting *Saxvik v. Saxvik*, 1996 S.D. 18, ¶ 16, 544 N.W.2d 177, 180). In *Vandyke*, the parties stipulated to a divorce settlement agreement that required the husband "to make payments of '$1,500 each month for a period of 19 consecutive months, or until remarriage/cohabitation of Wife or the death of either party.'" *Id.* ¶ 12, 888 N.W.2d at 564. In analyzing this provision, we stated that a common characteristic of permanent alimony is "payments which continue until death of the recipient or some other significant event such as remarriage, which terminates the need for continuing support." *Id.* ¶ 11 (quoting *Sanford v. Sanford*, 2005 S.D. 34, ¶ 24, 694 N.W.2d 283, 290). We further stated that "[t]he presence of conditions like these is typical of an arrangement for permanent alimony[,]" and because "rights inuring to a party as part of a property settlement are final," "it would seem strange for payments made pursuant to a property settlement to end under these conditions." *Id.* at ¶¶ 13, 19, 888 N.W.2d at 564, 566 (citations omitted).

[¶20.]     Steven is obligated to make monthly payments to Jennifer "until [Jennifer's] death or remarriage or [Steven's] death." Just as was the case in *Vandyke*, "[t]he presence of such conditions in the [decree] that could terminate future payments suggests that the provision of alimony was not intended to be a property division." *Id.* at ¶ 19, 888 N.W.2d at 566. Given the ability to terminate the payments upon the occurrence of certain significant life events, it would be inconsistent to categorize these payments as a form of property division.

[¶21.]     Nonetheless, Jennifer argues that the court valued Steven's future income by identifying that he was likely to earn $1,200,000 per year as a gastroenterologist. Accordingly, she argues that his future income was a critical consideration by the court to assess the marital estate's value and award monthly payments to Jennifer as a part of the property division. Contrary to Jennifer's claim, it would be inconsistent with the fundamental principles for the equitable division of property to categorize the monthly payments here as anything other than alimony. *See Johansen v. Johansen*, 365 N.W.2d 859, 862 (S.D. 1985) (stating that the division of property in a divorce decree relates only to the property rights that each party has *at the time the divorce decree is entered*). Additionally, we have consistently stated that "the potential earning capacity stemming [from professional degrees] is not distributable property[,]" because "[t]he factors and variables involved in such a consideration are simply too speculative[.]" *Wehrkamp v. Wehrkamp*, 357 N.W.2d 264, 266 (S.D. 1984). In *Saint-Pierre v. Saint-Pierre*, we held that a professional license or degree is not a divisible asset because:

> Equitable distribution of a professional degree would . . . require distribution of "earning capacity"—income that the degree

> holder might never acquire. The amount of future earnings would be entirely speculative. Moreover, any assets resulting from income for professional services would be property acquired *after* the marriage; the statute restricts equitable distribution to property acquired *during* the marriage[.]

357 N.W.2d 250, 260 (S.D. 1984) (quoting *Mahoney v. Mahoney*, 453 A.2d 527, 531–32 (N.J. 1982)).

[¶22.] Finally, the circuit court's statement in its ruling that the alimony "award is also based upon and takes into consideration the property division and the award is part of the [c]ourt's overall property division scheme" does not support Jennifer's claim that the alimony payments were a hybrid of both alimony and property division. Rather, the financial condition of each party after the division of property was a factor that the court must consider in awarding alimony. *See Straub v. Straub*, 381 N.W.2d 260, 261 (S.D. 1986) (stating that in awarding alimony, there are several factors that the circuit court "must rest its decision upon[,]" one of which includes the parties' "financial condition after the property division[.]").

[¶23.] In summary, the monthly payments Steven is obligated to pay Jennifer were consistently referred to throughout the divorce proceedings and the divorce decree as "alimony." The payments possess a hallmark feature of alimony because they are modifiable and terminable upon the death of either party or Jennifer's remarriage. Additionally, the court's oral findings of fact show that the monthly payments were primarily based on Steven's future earning capacity, a consideration unique to alimony determinations and one that is unable to be considered when dividing property. Given these considerations, the $15,000 monthly payments,

which have since been reduced to $11,000 per month, are alimony payments rather than a component of property division.

[¶24.] Finally, Jennifer has filed an application for attorney fees on appeal pursuant to SDCL 15-26A-87.3 and requests a total of $6,087.56. She also filed a motion for the costs associated with this appeal for $106.11, pursuant to SDCL 15-30-6. We have not received similar motions from Steven. Based on our resolution of the case, we deny Jennifer's motion for appellate attorney fees and costs.

## Conclusion

[¶25.] The circuit court's determination that the payments were a form of property division instead of alimony and its failure to deduct these payments from Steven's income and include them in Jennifer's income when calculating child support was a legal error. We reverse and remand for the circuit court to recalculate child support consistent with this opinion.

[¶26.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.